UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ARTHUR WILLIAMS                                        **DOCKET NO.: CV-21-3310**

                        Plaintiff,

        -against-


EAST MEADOW UNION FREE SCHOOL DISTRICT,
MATTHEW MELNICK in his official and individual
capacity, SCOTT ECKERS in his individual and
official capacity, ALISA BAROUKH, in her individual          **COMPLAINT**
and official capacity, ELAINE NAPOLITANO, in her
individual and official capacity, JOSEPH PARISI, in
his individual and official capacity, MARCEE
RUBENSTEIN, in her individual and official capacity,
MELISSA TELL, in her individual and official capacity,
DR. KENNETH CARD in his individual and official
capacity, and DR. PATRICK PIZZO, in his individual
and official capacity.
                                                         ***Jury Trial is Demanded***
                        Defendants.
-------------------------------------------------------------------X

        PLAINTIFF, ARTHUR WILLIAMS, his attorneys, the LAW OFFICES OF FREDERICK K.

BREWINGTON, as and for his complaint against the Defendants, states and alleges as follows:

## PRELIMINARY STATEMENT

        1.      This is a civil action seeking monetary relief (including past and on-going economic

loss), injunctive relief, declaratory judgment, compensatory and punitive damages, disbursements,

costs and fees for violations of the Plaintiff's rights, brought pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000(e) et seq. (as amended), Title VI of the Civil Rights Act of 1964, 42

U.S.C. § 2000(d) et seq., 42 U.S.C. § 1981, 1983, New York State's Human Rights Law, Executive

Law § 296, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 206(d).

        2.      Specifically, the Plaintiff alleges that the collective Defendants engaged in

discrimination and negligently, wantonly, recklessly, intentionally and knowingly sought to and did

wrongfully deprive Plaintiff of his employment, position, title, salary and full retirement benefits and pension, through misrepresentation, misinformation, harassment, and character assassination. Further, Plaintiff alleges Defendants created a hostile work place and environment, and engaged in a course of retaliation which made the workplace toxic and unwelcoming.

3.      Plaintiff, ARTHUR WILLIAMS, alleges that Defendants purposefully and intentionally discriminated against Plaintiff based upon his race, color and age. Further, Plaintiff alleges his forced termination of employment and denial of full retirement benefits as upheld by the New York State Teachers' Retirement System, which he qualified for before his removal, was based on discrimination of his race, color and age by the collective Defendants. Said acts were done knowingly, purposely, and with all intentions of depriving Plaintiff of his right to be free of discrimination and retaliation including termination.

## JURISDICTION AND VENUE

4.      The jurisdiction of this court is invoked under 28 U.S.C. §§ 1331 and 1343.

5.      This Court is requested to exercise pendant jurisdiction with respect to Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

6.      Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that Plaintiff's residence and the place where the unlawful employment practices complained of herein occurred in the County of Nassau.

7.      Prior hereto, on June 12, 2019 Plaintiff filed a Charge of Discrimination Case No. 10202620 against Defendants in the New York State Division of Human Rights (hereinafter "NYSDHR") alleging his wrongful termination due to the Defendants' unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New

York (Human Rights Law) because of age, race/color, and opposed discrimination/retaliation. NYSDHR cross filed a charge with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), under EEOC Charge No. 16GB904266.

8.    On March 23, 2021, Plaintiff received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 16G-2019-04266 (copy annexed hereto Exhibit A). As of the filing date of this complaint, ninety days  from the date of receipt has not passed.

9.    Plaintiff has requested, and received a dismissal for administrative convenience on Charge No. 10202620 from NYSDHR.

## PARTIES

10.    Plaintiff, ARTHUR WILLIAMS (hereinafter "WILLIAMS" or "Plaintiff" ), is an African-American man and 63 years of age. He resides in the County of Nassau and the State of New York.

11.    Defendant, EAST MEADOW UNION FREE SCHOOL DISTRICT (hereinafter "DISTRICT"), is a school district headquartered in the Town of Hempstead, County of Nassau, and State of New York. DISTRICT receives and utilizes federal funds and assistance. DISTRICT employs more than fifty full-time employees and did so at the time of their wrongful actions taken against Plaintiff.

12.    At all times relevant, MATTHEW MELNICK (hereinafter "MELNICK") is a Caucasian man and Board of Education President of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

3

13.     At all times relevant, SCOTT ECKERS (hereinafter "ECKERS") is a Caucasian man and Board of Education Vice President of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

14.     At all times relevant, ALISA BAROUKH (hereinafter "BAROUKH") is a Caucasian woman and Board of Education Member of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

15.     At all times relevant, ELAINE NAPOLITANO (hereinafter "NAPOLITANO") is a Caucasian woman and Board of Education Member of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

16.     At all times relevant, JOSEPH PARISI (hereinafter "PARISI") is a Caucasian man and Board of Education Member of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

17.     At all times relevant, MARCEE RUBENSTEIN (hereinafter "RUBENSTEIN") is a Caucasian woman and Board of Education Member of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

18.     At all times relevant, MELISSA TELL (hereinafter "TELL") is a Caucasian woman and Board of Education Member of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

19.     At all times relevant, DR. KENNETH A. CARD, JR. (hereinafter "CARD") is an African American man and Superintendent of Schools of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

20.     At all times relevant, DR. PATRICK PIZZO (hereinafter "PIZZO") is a Caucasian man and Assistant Superintendent for Business and Finance of Defendant DISTRICT, and at all relevant times is a member or trustee of the Defendant DISTRICT.

## FACTUAL ALLEGATIONS

21.     Plaintiff is an African American Man who is 62 years of age. Plaintiff was formerly employed at the Defendant East Meadow Union Free School District (hereinafter "District"). Plaintiff resides in the County of Nassau and the State of New York.

22.     Defendant DISTRICT receives and utilizes federal funds to support school functions and activities. For example, for the year of 2018, DISTRICT received funds in the amount of $2,434,422 from the U.S. Department of Education and $758,280 from the U.S. Department of Agriculture.

23.     Defendant DISTRICT has a population at or around 52,333 people. Within that population, approximately 62% are white persons and 5% are black persons.

24.     Throughout Plaintiff's employment at the District, Plaintiff was one of a few African American administrators employed by the District. Plaintiff was first hired as Assistant Business Administrator on July 1, 2005, and was awarded tenure in this position in 2008. On September 14, 2009, Plaintiff resigned from his position as an Assistant Business Administrator to pursue other opportunities.

25.     Sometime in 2016, Defendant Patrick Pizzo (hereinafter "Pizzo") encouraged Plaintiff to apply for the Cabinet Level Contract position of Assistant to the Superintendent for Administration and Special Projects with the Defendant District. On September 1, 2016, Plaintiff was hired for the Assistant to the Superintendent for Administration and Special Projects position.

26.     Unbeknownst to Mr. Williams at the time, Defendant Pizzo disingenuously encouraged Mr. Williams to apply for the aforementioned position for two reasons. First, upon information and belief, various co-workers later informed Plaintiff that it was Defendant Pizzo's goal for another candidate named Valenti (hereinafter "Mr. Valenti"), to not be hired for the position.

27.     Notwithstanding the false encouragement, it was Defendant Pizzo's true intention that if Plaintiff were to be hired for the said position, he would ultimately fail and thereafter be terminated allowing Defendant Pizzo the opportunity to hand pick his replacement.

28.     At all times during Plaintiff's employment with the District, Plaintiff performed his duties in an exemplary manner, despite the fact that his work environment became increasingly hostile and abusive, which was markedly different than how all other employees of the District were treated.

29.     During Plaintiff's years working in the District facilities department, Plaintiff was able to successfully oversee and implement campus beautification projects at each school, closed out two years of successful capital projects, and advocated and received more than $120,000.00 in grants to upgrade and provide safer equipment for the District's children. Additionally, as Assistant to the Superintendent for Administration and Special Projects, Plaintiff implemented programs in all district buildings which is projected to have saved the District more than $1,500,000.00.

30.     Prior to Mr. Williams' appointment to the position of Assistant to the Superintendent for Administration and Special Projects, Plaintiff had thirty-seven (37) years of experience in the general workforce, ten (10) of which were in a supervisory capacity, and all of which were and are stellar.

31.     In 2016, the once cordial working relationship between Mr. Williams and Defendant

Pizzo changed to an increasingly and overtly hostile one. During the tail end of 2016, Mr. Leon Campo, the then Superintendent of the East Meadow School District, (hereinafter "Mr. Campo"), announced that he would be retiring from his position. Due to the fact that Mr. Campo hired and was a mentor to Mr. Williams and Defendant Pizzo, Defendant Pizzo initially refrained from treating Mr. Williams in an adverse manner. Additionally, Mr. Campo, at the time, entrusted Defendant Pizzo to mentor Mr. Williams since Defendant Pizzo had previously served in the District's facility department.

32.     However, after the announcement of Mr. Campo's retirement, Defendant Pizzo brazenly initiated an onslaught of disrespectful, discriminatory, and abusive behavior toward Plaintiff. Defendant Pizzo would regularly make comments, including during performance reviews, that Mr. Williams "didn't fit in" the District. These comments were made for no other reason except Plaintiff's color, race and age. Despite his disingenuous support of Mr. Williams' application for his position, Defendant Pizzo would make a habit of telling Plaintiff that he was "too old" for the job and "too old to go on the roof" of the District's buildings.

33.     Furthermore, Defendant Pizzo regularly made abrasive comments to Mr. Williams because of his color and race and in the presence of Mr. Williams' subordinates in an effort to undermine him and create a divisive and hostile work environment. On occasion, Defendant Pizzo made negative remarks about Mr. Williams' weight, his food selection and the smell of his food that he ate in the office. As the only African American male in the office, Defendant Pizzo would treat Mr. Williams differently than white employees that ate in the office as they were never treated in such a manner. Mr. Zenon Ploski (hereinafter "Mr. Polski"), a maintenance worker on Mr. Williams' staff, was witness to the hostile treatment of Defendant Pizzo.

34.     Furthermore, in other instances, Defendant Pizzo would publicly berate Mr. Williams by yelling at him in front of his secretary; picking and choosing to attend meetings with Mr. Williams; undermining Mr. Williams' authority at team meetings with the head custodian, Bob Callan, by calling Mr. Williams' decisions "stupid" and saying that "[he doesn't] think [they] make any sense." None of Mr. Williams white peers at the District were treated this way.

35.     Notwithstanding the blatant disrespect, Mr. Williams only chose to informally report the occurrences to Mr. Campo, in person, in an attempt to keep the peace in the office. In or about 2016-2017, Mr. Williams made a verbal complaint to Mr. Campo which prompted Mr. Campo to have a discussion in his office with Mr. Williams and Defendant Pizzo, in hopes of reaching a resolution. Mr. Williams expressed to Mr. Campo that he was the target of Defendant Pizzo based on his race, color and age. The meeting, however, was ineffective and did not prevent or stop Defendant Pizzo's aggression and discriminatory conduct towards Mr. Williams. Instead, Defendant Pizzo became more brazen and open with his hostility, disrespect and abuse of Mr. Williams, even in the presence of Mr. Campo. Those statements included:

a.     He doesn't fit in - he never will.
b.     He is always eating - others tell me the stuff he eats smells.
c.     He got tenure only because of you (Leon Campo).
d.     I think he lies all the time.
e.     Mentoring - I deserve my salary and his because he sits on his black ass.
f.     You tell me that my job is to make him a success. No, my job is to get his big fat black ass out of East Meadow.
g.     The Board and I agree, he does not fit in.
h.     Mr. Campo - it is his family or mine - he must go - whatever it takes.

36.     After Plaintiff spoke with Mr. Campo, Defendant Pizzo immediately began to retaliate and make the work environment more hostile against Mr. Williams for exercising his right to make a complaint to Mr. Campo about the discriminatory and abusive conduct of Defendant Pizzo

towards him. After the initial meeting occurred, Defendant Pizzo attempted to issue a disciplinary write up about Mr. Williams for lodging a complaint against him. In response, Mr. Campo had the reprimand disregarded and removed from Mr. Williams' file. However, the onslaught of retaliation by Defendant Pizzo continued.

37.     Defendant Pizzo further retaliated against Mr. Williams by excessively scrutinizing and documenting him; making disparaging comments about his food selection and his weight; berating Plaintiff in the presence of his subordinates. For example, on one occasion, Defendant Pizzo berated Plaintiff in the presence of Pete Stein (hereinafter "Mr. Stein"), by calling Plaintiff a "fucking idiot" during a meeting in the fall of 2018. Defendant Pizzo also repeatedly told Mr. Williams that he is too old for his position and fabricated a false narrative about Mr. Williams' job performance and competency. No white Administrator were treated in this fashion.

38.     Defendants, specifically Defendant Pizzo, blatantly targeted Plaintiff in an effort to destroy Plaintiff's reputation and cause Plaintiff's unlawful termination. Defendant Pizzo and Defendants created a hostile work environment for Plaintiff by attempting to depict and persuade other District employees that Plaintiff was incompetent, verbally abusing Plaintiff, subjecting Plaintiff to unwarranted constant review and performance evaluations, scrutinizing Plaintiff, and undermining Plaintiff's authority over Plaintiff's direct subordinates and other District employees with whom Plaintiff worked.

39.     Defendants' conduct towards Plaintiff also included numerous instances of retaliatory, abusive, and discriminatory direct targeting of Plaintiff, or complicity with or cover up of the abusive treatment to which Plaintiff was subjected.

40.     Defendant Pizzo fostered an environment wherein Mr. Williams was viewed in a negative light to his peers and subordinates. For instance, Sandy Sanger (hereinafter "Ms. Sanger") and Elaine, both white women, who worked in Mr. Williams' office would work in conjunction with Defendant Pizzo to create a hostile environment for Mr. Williams. Mr. Plotsky, can attest to the fact that Defendant Pizzo would relay orders to them to undermine Mr. Williams' authority. For example, Elaine would often "lose paperwork" when Mr. Williams would submit paperwork to have a potential Black or African American employee hired to work on his staff. Ms. Sanger would often behave in a subtle and rude manner when interacting with Mr. Williams in an effort to create a tense environment. Upon information and belief, such conduct was instructed and condoned by Defendant Pizzo.

41.     Furthermore, Defendants claim that they offered Mr. Williams additional help, however, this was simply an attempt to give the appearance that Defendants were assisting Plaintiff on paper in order to justify his wrongful termination.

42.     For example, on June 28, 2017, Defendant Pizzo appointed his personal friend, Mike Sheenan, a retired director of facilities, to "mentor and assist" Plaintiff in completing summer projects. However, in actuality, Mr. Sheenan did neither. Throughout the course of the summer, Mr. Sheehan followed Mr. Williams around the District's facilities in search of areas where he could make negative remarks about Mr. Williams' performance. At no point did Mr. Sheehan offer any guidance or assistance. Rather, Mr. Sheenan went out of his way to question other department employees about Mr. Williams solely to find negative feedback. The notion that Mr. Sheehan was an independent consultant is far from the truth and is further evidence of Defendants' fabrications. No similarly situated white Administrators were treated in this fashion.

10

43.     Additionally, Defendants in their New York State Division of Human Rights (hereinafter "NYSDHR") response to Plaintiff's Charge of Discrimination, cited purported incidents of Mr. Williams' alleged poor performance by cherry picking isolated incidents and highlighting them without giving the full context for an accurate understanding of the situations.

44.     For example, in the 2018-19 school year, there was a sink hole which developed on the District's property and a broken hinge on a school gate. Defendants contend that Mr. Williams was an unresponsive employee, yet purposefully glossed over the fact that Plaintiff had to abide by the procedures that were in place wherein Plaintiff was required to submit a bid to a contractor which needed to be approved in order for these matters to be addressed. Simply put, regardless of Mr. Williams prompt actions, the bureaucratic process to accomplish work in the District was a significant factor that affected Plaintiff's completion of various work projects and assignments. However, Mr. Williams, in fact, took these steps and had these issues addressed accordingly.

45.     To further tarnish Plaintiff's reputation, Defendants created an excessive trail of fabricated documentation created by Defendant Pizzo. For instance, Defendant Pizzo's bold, self-serving claim that he himself saved the district $150,000.00 due to an error made by Mr. Williams is yet another example of such fabrication.

46.     The excessive scrutiny and documentation by Defendant Pizzo eventually led to Mr. Williams being placed on a performance improvement plan which was another tool used to dismantle Mr. William's credibility within the District. The expectations, as dictated by Defendant Pizzo, were so subjective that Mr. Williams performance could be interpreted to be unsatisfactory. The loose language, inter alia, consisted of the following:

a.  Mastery of the work flow system in your office
b.  Leadership of construction area of the Bond work/budgeted capital work.
c.  Leadership in the areas you supervise, including effective communication to all levels in the facilities department.
d.  Effective relationships with district Principals. This includes effective feedback mechanisms to address their questions in a timely/accurate manner.

45.     Defendant Pizzo's conduct was a furtherance of his goal of creating circumstances wherein Mr. Williams could be said to not perform to par and thereafter to support Defendants' decision to wrongfully terminate him.

46.     On December 6, 2018, Plaintiff received a letter from the District Superintendent Defendant Kenneth A. Card (hereinafter "Defendant Card"), outlining his intention to recommend to the Board of Education ("BOE") that Plaintiff be terminated. The BOE was to consider the recommendation at their January 9, 2019, meeting and Plaintiff's termination was to take effect on April 1, 2019. The primary reason for termination given was over "the health and safety of school children."

47.     Plaintiff was given a deadline to respond by December 27, 2018. On December 10, 2018, Plaintiff responded to Dr. Card's letter and also requested to be provided with a written statement of the Board's reasons for the termination recommendation.

48.     On December 18, 2018, Dr. Card, on behalf of himself and the other Defendants, responded with a mere list of bullet points and did not provide any substantive reasoning to support his recommendation for termination. Defendant Card's explanation of the reasons for Mr. Williams' termination was also devoid of any alleged concerns for "the health and safety of school children." Defendant Card's explanation was merely a regurgitation of Defendant Pizzo's write-ups lodged against Mr. Williams.

12

49.     The Board's decision to set the termination date to April 1, 2019, was the result of a decision reached after discussion and was intentional. Several of the Board members wanted to allow Mr. Williams to finish the remainder of the school year. The difference in perspectives amongst the Board Members tends to contradict the alleged imminent "safety concerns" for the children of the District.

50.     Without an opportunity to address the claims against him, Plaintiff received a letter by Defendant Card, dated January 10, 2019, explaining that the BOE met and approved his termination effective at the end of the day on April 1, 2019, pursuant to NYS Education Law §3031.

51.     In response to Defendant Card's January 10, 2019 letter, Plaintiff sent a response seeking clarification of the BOE's reasoning and findings to trigger such a spontaneous termination action. Plaintiff respectfully appealed to Dr. Card's good will and requested that he not be terminated prior to the end of the school year as had been a practice in the past. Plaintiff explained that such action would have a deleterious effect on his opportunity to gain subsequent employment and would also negatively impact his livelihood and financial stability.

52.     On February 14, 2019, Mr. Williams met with Anthony Russo, Assistant Superintendent for Personnel and Administration (hereinafter "Mr. Russo"), to discuss the benefits to which he was entitled pursuant to the Memorandum of Understanding ("MOU"). Mr. Williams was informed by Mr. Russo that he would be compensated for his unused vacation days, totaling nearly $28,000.

53.     However, Defendants attempted to divest Mr. Williams of his other rightfully earned benefits. Defendants informed Mr. Williams that he was not entitled to payment for unused sick days or health benefits because he was terminated and was not in a "benefits eligible position" for seven

years. Plaintiff, at the time, was told that he did not accumulate the requisite number of years to receive his benefits. This assertion was contrary to the New York State Teacher's Retirement System determination which credited Mr. Williams for a total of seven years and eight months of employment with the District. Furthermore, the language used by Defendants, however, was not in the MOU which was agreed to by both parties. To the contrary, the MOU is devoid of the term "benefits eligible position."

54.     Thereafter, without any input from Plaintiff, Defendants presented Mr. Williams with a "proposed settlement agreement" that would essentially divest and strip Mr. Williams of nearly all of his rights with the exception of one benefit that was chosen by Defendants. The proposed settlement agreement merely provided Mr. Williams with his unused sick days, to which he was already entitled, and yet Defendants attempted to coerce Plaintiff into accepting this agreement or receive nothing at all. This was despite his tenure with the District and his exemplary performance as an Assistant to the Superintendent for Administration and Special Projects.  As a result, Mr. Williams was compelled to reject the mandate placed on him as a so-called settlement agreement on March 27, 2019. After receiving notice of his termination and unsuccessfully attempting to find a remedy to his wrongful termination with the District, Plaintiff was left with no real options except to simply retire with the benefits due to him.

55.     Plaintiff did and continues to contest the validity of the evaluations and the so-called performance improvement plan lodged against him by Defendant Pizzo. Moreover, the "opportunity" afforded to Mr. Williams to retire was an underhanded attempt to divest him of the retirement benefits which he earned during his years of employment with the East Meadow Union Free School District.

56.     Defendants effectively offered Mr. Williams an adhesion contract wherein he would lose nearly every benefit he was entitled to pursuant to the MOU, which governed the disposition of his retirement benefits. The terms of Respondents' proposed settlement agreement required Mr. Williams to "irrevocably and unconditionally" submit to the will of the Board of Education. The agreement required Plaintiff to voluntarily waive all of his rights to hold the District accountable for the discriminatory and retaliatory actions of its employees. The terms of the agreement left Mr. Williams with an unreasonable Hobson's choice wherein Respondents essentially forced him to take what they were offering or leave the District with nothing at all. If Mr. Williams would have accepted the agreement, he would have been stripped of the following benefits to which he was entitled and included but are not limited to:

a.     Comprehensive health insurance into his retirement
b.     Excess major medical into his retirement
c.     Life Insurance into his retirement
d.     Post Employment Benefits Program (i.e. $5,400 per year times the years of Complainant's service)

57.     Such a loss to Mr. Williams is in direct contravention to the language of the MOU itself. Section 2.03(3) of the MOU states that:

"The following specifically-named individuals shall be entitled to continue into their retirement from the East Meadow Union Free School District, those fringe benefits in the nature of health, medical, and life insurance or other applicable benefits which are in effect for such individuals at the time of their actual retirement from District service under the terms and conditions of the employment agreement under which they retire, including but not limited to the rate of employer-employee contributions specified in the employment contract: (4) Mr. Arthur Williams, Asst. to the Supt. For Admin. and Special Projects."

58.     In addition to contract issues, the clear differential treatment to which Mr. Williams was subjected based on his race, color and age, and the clear coercion applied in order to force Mr.

Williams to sign an agreement which was clearly not to his benefit, and resulted in Plaintiff being deprived of other important rights.

59.    The so-called Settlement Agreement was not an agreement at all, and contained a number of other troubling terms, including requiring Mr. Williams to waive his right to be compensated for the violations of his rights that he suffered. This was nothing more than a genuine attempt to emasculate Plaintiff as has been done in history to Black people.

60.    On April 11, 2019, Plaintiff received a letter from benefits administrator Kathy Klimkowski, stating that his employment with the District had terminated and his benefits were set to expire on April 30, 2019, and May 31, 2019, respectively. True to form, the letter indicated that because an agreement had not been met with the board, his resignation was rejected. Under Plaintiff's contract as a tenured employee, Plaintiff was entitled to collect his benefits under the terms of his contract. These rights were denied to Plaintiff. Instead, the District summarily rejected Plaintiff's request to peacefully and respectfully resign, leaving Plaintiff with no opportunity to gain future proper employment and maintain proper healthcare for himself and his family.

61.    The so-called agreement referred to in the April 11, 2019, letter was not reasonable and did not include mutually agreed upon terms. The so-called agreement contained unreasonable terms and required Plaintiff to "irrevocably and unconditionally" submit to the will of the BOE. The so-called agreement required Plaintiff to "voluntarily waive" all of his rights to hold the District accountable for their race-based and age-based actions by the District and its personnel. Such so-called "agreement" was an unreasonable adhesion contract that left Plaintiff with no real choice.

62.    Despite the fact that Plaintiff spent more than seven (7) years helping to improve the District in all aspects, the Defendants offered Plaintiff a so-called agreement that essentially

16

amounted to an attempt to force Plaintiff to give up all but a few of the rights that Plaintiff had earned or nothing at all. The Defendants' actions amounted to a slap in the face to Plaintiff and his long and dedicated career of service. This action was a further act of abuse and discrimination to which Plaintiff had been forced to endure up until that point. Plaintiff was denied an opportunity to end his employment at the District on a positive, reasonable and respectful note.

63.     The so-called agreement and the actions of the District only served to tarnish and smear Plaintiff's character and highlight the grossly adverse treatment he endured during his time of employment at the District under Defendant Pizzo. The so-called agreement, if signed, would have enabled the District to further mock, abuse and discriminate against Plaintiff.

64.     On April 12, 2019, in a further act of retaliation and discrimination, Plaintiff received a letter from Assistant Superintendent for Personnel and Administration, Anthony Russo, explaining that because he had not yet earned the requisite seven years in his position, he was not eligible for Health Insurance benefits as provided by Plaintiff's original contract at the time of his employment. Plaintiff did not previously intend to retire nor leave his position. The Board forced that decision on Plaintiff.

65.     But for the Board's determination, Plaintiff would still be employed and would not have had to retire. Plaintiff did not agree with the Boards' initial finding from the start of the termination process. Plaintiff was forced to consider retirement. That option, along with any healthcare benefits and other rights, were unreasonably stolen by the BOE and District.

66.     After receiving notice of the BOE's intention to terminate Plaintiff and attempting to keep his employment at the District, Plaintiff realized that a resolution would not be reached and as such, attempted to leave the District with his dignity intact and attempted to not hinder his chances

for employment with another school district. However, the District refused to even allow Plaintiff's

employment to continue until June 30, 2019, the end of the school year, as has been allowed for

other white employees and as is the standard procedure of the District. Due to Plaintiff's color, race,

and age, the District refused to follow standard protocol regarding the termination of District

employees.

67.     Instead, Pizzo, the District and the BOE sought to further harm and publicly lynch

Plaintiff. Plaintiff's request to not be terminated until the end of the school year was not unusual as

it has been the process honored by the District to allow an employee who is to be terminated to finish

out the school year, unless a crime or moral deviance, unacceptable to any person in the public trust,

is the issue. Such was not an issue in Plaintiff's case. Instead, Pizzo, the District and the BOE were

determined to break Plaintiff's spirit and force until Plaintiff agreed to surrender his soul, his rights

and his benefits.

68.     On May 3, 2019, Plaintiff again appealed to the BOE to treat him as other employees

had been treated by the East Meadow School District, with dignity, with respect and as a person who

served the District's children, community and taxpayers with all of his ability and energy. While

Plaintiff served District and the community for over seven (7) years, he also earned the respect of

his colleagues. Prior to his termination, nothing had been done by the District or the BOE to address

Plaintiff's complaints of racial bias and the workplace harassment he was forced to endure while

employed as an Assistant to the Superintendent for Administration and Special Projects.

69.     Plaintiff has been treated abusively due to his race, color and age by his immediate

supervisor, Dr. Pizzo, the District and the BOE, and humiliated in the presence of employees who

reported directly to him. On numerous occasions Mr. Williams related these incidences to those

individuals who could rectify the unlawful treatment to which he was subjected. The District refused to rectify the unlawful treatment to which he was subject.

70.     Defendants' discriminatory treatment of Plaintiff was based on his race, color, and age, and because of his prior complaints about the abusive treatment to which he was subjected.

71.     Plaintiff appealed to the Defendants to be treated consistently with other white employees, but such request was denied by the District, BOE and its members. The District and BOE refused to recognize Plaintiff's official retirement from the New York State Teachers Retirement System effective on April 11, 2019, and under the terms and conditions of any East Meadow contract. Further, the BOE and its members have violated their own procedures and has intentionally never directly responded to Plaintiff's previous correspondence and complaints.

72.     Plaintiff has been targeted for abuse, discrimination, and retaliation by Defendants ensuring a tremendous financial, professional, emotional and human cost to Plaintiff. The Defendants, collectively, through their actions and inactions, have deprived Plaintiff of his livelihood, physical and emotional well-being, and at least hundreds of thousands of dollars in attainable future opportunities and earnings.

73.     The removal of Plaintiff from an administrator position in the middle of the year was highly unusual and punitive. Other white District employees have physically assaulted students and have been afforded different treatment. However, because Plaintiff is a Black man, in a position of significant authority, he was targeted because of his color, race and age, and retaliated against because he spoke out and filed complaints regarding the abusive and discriminatory conduct of Defendants to which he was subjected.

74.     The differential treatment of Plaintiff became even more obvious. After Mr. Williams' wrongful termination, Defendants' hired Defendant Pizzo's personal friend, Bob Gannis, a white male, at a salary of $160,000.00 per year, to temporarily serve in Mr. Williams' position. Thereafter, another white male, Craig Cammarata, was appointed to Mr. William's position at a salary of $150,000.00 per year. Both salaries are thirty and forty thousand dollars more than Mr. Williams' salary prior to termination and further evidence of the discriminatory treatment against Mr. Williams.

75.     As a result of the continued abuse, discrimination, and retaliation to which Plaintiff was subjected, Plaintiff filed a NYSDHR Charge of Discrimination against Defendants on June 12, 2019, for the "unlawful discriminatory practice relating to employment" based on Plaintiff's race, color and age.

76.     On January 6, 2020, the NYSDHR made a determination that "probable cause exists to believe that" the Defendants "have engaged in or are engaging in the unlawful discriminatory practice complained of."

77.     On October 1, 2020, Plaintiff filed a request for dismissal of his complaint for administrative convenience in order to pursue his claims in Federal Court.

78.     In a letter dated October 15, 2020, the NYSDHR dismissed Plaintiff's New York State Division of Human Rights case for administrative convenience.

79.     In a letter dated March 23, 2021, the EEOC dismissed Plaintiff's case and permitted right to sue in Federal District Court.

## AS AND FOR THE FIRST COUNT
### 42 U.S.C. § 2000(e) (Title VII)

80.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1  through 79 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

81.     The Defendant DISTRICT through their agents and employees, discriminated against the Plaintiff in his employment based on Plaintiff's race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), as amended.

82.     The Defendant DISTRICT, BOE and its members created a hostile work environment against Plaintiff through intentional acts of discrimination and retaliation. The hostile work environment caused Plaintiff to endure abuse, harassment, embarrassment, and suffering based on his race and color. Other white employees were not subject to the hostile work environment to which the Plaintiff was subjected.

83.     As a direct result of said Defendants' acts, Plaintiff has suffered and continues to suffer loss of status, opportunities, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to his reputation. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of five million ($5,000,000) dollars as well as costs and attorney's fees.

## AS AND FOR THE SECOND COUNT
### 42 U.S.C. § 2000(d) (Title VI)

84.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 83 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

85.     Defendant DISTRICT through its agents and employees, discriminated based on race and color while receiving federal assistance which violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq.

86.     Because of Defendant DISTRICT, through its agents and employees, and individual Defendants' actions, Plaintiff was excluded from nondiscriminatory employment in DISTRICT, Plaintiff was denied retaining his employment and the benefits he earned during his employment, and was personally discriminated against by Defendants based on his race and color.

87.     The Defendant DISTRICT, BOE and its members created a hostile work environment against Plaintiff through intentional acts of discrimination and retaliation. The hostile work environment caused Plaintiff to suffer abuse, harassment, embarrassment, and suffering based on his race and color. Other white employees were not subject to the hostile work environment to which the Plaintiff was subjected.

88.     As a direct result of said Defendants' acts, Plaintiff has suffered and continues to suffer loss of status, opportunities, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to his reputation. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of five million ($5,000,000) dollars as well as costs and attorney's fees.

### AS AND FOR THE THIRD COUNT
**42 U.S.C. § 1981**

89.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 88 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

90.    The above discriminatory pattern and practice based on race and color by Defendants DISTRICT, MELNICK, ECKERS, BAROUKH, NAPOLITANO, PARISI, RUBENSTEIN, TELL, CARD, and PIZZO, their agents and employees violates 42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No. 102-166).

91.    The Defendant DISTRICT, BOE and its members created a hostile work environment against Plaintiff through intentional acts of discrimination and retaliation. The hostile work environment caused Plaintiff to suffer abuse, harassment, embarrassment, and suffering based on his race and color. Other white employees were not subject to the hostile work environment to which the Plaintiff was subjected.

92.    As a direct and proximate result of said acts, Plaintiff has suffered loss of employment and continues to suffer loss of income, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

93.    Because of Plaintiff's race and color he has been subjected to abuse and mistreatment as detailed above and has been treated differently than white individuals.

94.    As a result of the Defendants' discriminatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000) dollars, as well as punitive damages against the individual defendants, and costs and attorney's fees.

## AS AND FOR THE FOURTH COUNT
## 42 U.S.C. § 1983 - MUNICIPAL VIOLATIONS

95.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 94 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

96.     Defendant DISTRICT acting under color of law, and through their employees, servants, agents, and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiff of rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Defendants DISTRICT, MELNICK, ECKERS, BAROUKH, NAPOLITANO, PARISI, RUBENSTEIN, TELL, CARD, and PIZZO.

97.     Defendants have consistently sought to discriminate against persons like Plaintiff and to engage in actions and abuses which violate and deny their employee's rights as provided under the Fourteenth Amendment of the United States Constitution. Defendants have done so by repeatedly denying their employee's proper care, attention and refusal to employ effective procedures to prevent and deal with racial discrimination and retaliation in the work place. Further, Defendants have violated their employee's rights by subjecting them to retaliation and by allowing and fostering an unsafe and hostile work environment. This is evidenced by Defendant's consistent failure to rectify wrongful conduct, failure to question actions, and failure to discipline; thus regularly condoning and in fact tolerating an unsafe and hostile working environment, permeated with discrimination against Black employees. Defendant here not only failed to follow their own rules and procedures but have manufactured excuses and false rationales for failing to follow their rules.

98.     By permitting and assisting such a pattern of misconduct, the Defendant DISTRICT acted under color of custom and policy to condone, encourage and promote the deprivation of Plaintiff's Fourteenth Amendment Rights.

99.     Defendant's infringement upon and in violation of the rights, described herein including those protected under the Fourteenth Amendment of the United States Constitution, was and is intended to discriminate against Plaintiff and those like Plaintiff. Defendants have sought to and have treated employees, like and including Plaintiff, as they have in violation of their equal protection rights. Defendants have treated other non-African American employees who are similarly situated differently and better than Plaintiff including but not limited to Defendant PIZZO and Mr. Russo.

100.    As a direct and proximate result of the Defendant DISTRICT's policy and practice not properly investigating their employee's complaints, failing to implement their policy, and thus fostering and condoning a hostile work environment by tolerating the use of racially offensive slurs and comments, the DISTRICT has been subjected to numerous federal and state Complaints and lawsuits alleging Defendant's discriminatory acts towards their employees as violations of section 1983.

101.    Defendants, intentionally and knowingly as an act of discrimination based on race failed to promote the Plaintiff because of his race, color and age in violation of 42 U.S.C. § 1983.

102.    As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to his reputation.

103.    As a result of Defendant DISTRICT's acts, Plaintiff suffered, and is entitled to, damages sustained to date and continuing in excess of five million ($5,000,000) dollars, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find just and proper.

### AS AND FOR THE FIFTH COUNT
### 42 U.S.C. § 1983

104.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 103 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

105.    The Defendants collectively and each one of them individually have engaged in actions and abuses which violate and deny Plaintiff his rights as provided under the Fourteenth Amendment of the United Stated Constitution violating his Fourteenth Amendment right of equal protection and due process in discriminating against Plaintiff because of and account of his race, color and age.

106.    Defendants' infringement upon and violation of Plaintiff's rights protected under the Fourteenth Amendment of the United States Constitution was and is intended to place a chilling effect upon the exercise of such rights by Plaintiff and other persons as is their right as provided by the U.S. Constitution to exercise such rights.

107.    Plaintiff, an older African American man, has been treated differently from similarly situated White and/or younger employees, because of his race, color and age.

108.    Defendants' acts have caused the Plaintiff to suffer and has resulted in diminishing his employment, loss of promotion, and the ability to advance in his employment.

109.    The above discriminatory pattern and practice based on race and color by Defendants DISTRICT, MELNICK, ECKERS, BAROUKH, NAPOLITANO, PARISI, RUBENSTEIN, TELL,

CARD, and PIZZO, their agents and employees violates 42 U.S.C. § 1983 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No. 102-166).

110. None of the Defendants took action to prevent the wrongful actions taken against Plaintiff to discriminate against him and cause his employment to be wrongfully ended and otherwise materially alter the terms and conditions of his employment agreement.

111. Defendants acquiesced and contributed to the continuation of the conspiracy to violate Plaintiff's rights in failing to take action as to prevent and expose the discriminatory and violative actions being taken against Plaintiff.

112. Each of the individual Defendants condoned the wrongful, discriminatory, reckless, careless and intentional acts taken as set out herein and each had an affirmative responsibility to prevent, expose and reverse said wrongful, discriminatory, reckless, careless and intentional acts but instead joined in this conspiracy against Plaintiff because of his age, race, and color.

113. In addition, the acts complained of herein subjected Plaintiff to a hostile work environment that spanned a number of years. Plaintiff was treated in an abusive manner based on his color, race and age in the workplace while working under Defendant Pizzo. Defendant Pizzo made hurtful and abusive comments about Plaintiff, which Plaintiff listened to time and time again. Defendant Pizzo and the DISTRICT, through its employees and agents, made it clear through their discriminatory and retaliatory statements and actions that Plaintiff was not welcomed or encouraged in the workplace. Defendants engaged in an active discriminatory and retaliatory pattern that created an extremely hostile  work environment for Plaintiff to conduct his job. This hostile work environment was created by Defendants because of Plaintiff's color, race and age.

114.    Further, the actions of Defendant DISTRICT and the individual Defendants engaged in retaliation against Plaintiff.

115.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer diminished employment, loss of income, loss of employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damage to his reputation.

116.    As a result of Defendants' acts, Plaintiff suffered and is entitled to, damages sustained to date and continuing in excess of five million ($5,000,000) dollars, as well as punitive damages, costs and attorney's fees.

## AS AND FOR THE SIXTH COUNT
### NYS Executive Law § 296

117.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 116 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

118.    The above discriminatory pattern and practices based on race and color by Defendants DISTRICT, MELNICK, ECKERS, BAROUKH, NAPOLITANO, PARISI, RUBENSTEIN, TELL, CARD, and PIZZO, their agents and employees, violates New York State Executive Law §296.

119.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within his employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

120.    Because of Plaintiff's race and color and age he has been subjected to abuse and mistreatment as detailed above and has been treated differently than White individuals in that Plaintiff has been treated as stated herein because of his race and color.

121.    The Defendant DISTRICT, BOE and its members created a hostile work environment against Plaintiff through intentional acts of discrimination and retaliation. The hostile work environment caused Plaintiff to suffer abuse, harassment, embarrassment, and suffering based on his race and color. Other white employees were not subject to the hostile work environment to which the Plaintiff was subjected.

122.    As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees.

### AS AND FOR THE SEVENTH COUNT
### 29 U.S.C. § 621 et seq.

123.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 116 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

124.    Plaintiff establishes a prima facie case of discrimination under the Age Discrimination in Employment Act of 1967.

125.    Plaintiff is over the age of forty (40) and thus is within the protected age group.

126.    Plaintiff was qualified for the position of Assistant to the Superintendent for Administration and Special Projects due to, including but not limited to, his prior thirty ("30") years of experience in the general workforce, ten ("10") of which were in a supervisory capacity, and four (4) years of prior experience in the DISTRICT as Assistant Business Administrator.

127.    As described above, Plaintiff experienced adverse employment actions from Defendants through unlawful termination, denial of his retirement rights, harassment, abuse, embarrassment and a hostile work environment.  Other younger employees were not subject to the hostile work environment to which the Plaintiff was subjected.

128.    Based on Defendants' actions, such discriminatory and retaliatory actions by Defendants DISTRICT, BOE and its members occurred under circumstances giving rise to an inference of discrimination towards Plaintiff based on age.

129.    As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees.

## **PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a.      First Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of five million ($5,000,000) dollars, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

b.      Second Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of five million ($5,000,000) dollars, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

c.      Third Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of five million ($5,000,000) dollars, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

d.      Fourth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of five million ($5,000,000) dollars, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

e.      Fifth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of five million ($5,000,000) dollars, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

f.  Sixth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of five million ($5,000,000) dollars, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

g.  Seventh Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of five million ($5,000,000) dollars, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

h.  A declaratory judgment stating that Defendants willfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

i.  Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to place Plaintiff in the positions that he properly applied and was improperly denied; to require the Defendants to retroactively pay all monies owed to Plaintiff as a result of being denied certain employment opportunities; to remove Plaintiff's termination and any suspensions and any other disciplinary references from his file; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

j.  An order granting such other legal and equitable relief as the court deems just and proper.


**TRIAL BY JURY IS DEMANDED**


Dated: Hempstead, NY
     June 11, 2021

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: _____
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959

EXHIBIT A

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | **Arthur Williams** | From: | **New York District Office** |
|---|---|---|---|
| | **11 Richards Lane** | | **33 Whitehall Street** |
| | **Syosset, NY 11791** | | **5th Floor** |
| | | | **New York, NY 10004** |

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Holly M. Shabazz,** | |
| **16G-2019-04266** | **State & Local Program Manager** | **(929) 506-5316** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)     **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Judy A. Keenan*

March 23, 2021

Enclosures(s)

**Judy A. Keenan,**
**District Director**

*(Date Issued)*