```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ARTHUR WILLIAMS,

                                Plaintiff,
                                                        MEMORANDUM ORDER
            -against-                                   21-CV-3310 (NJC) (JMW)

EAST MEADOW UNION FREE SCHOOL DISTRICT
et al.,

                                Defendants.
-------------------------------------------------------------------X
```

**A P P E A R A N C E S:**

    Albert Darnell Manuel, III, Esq.
    Cobia Malik Powell, Esq.
    Frederick K. Brewington, Esq.
    **Law Offices of Frederick K. Brewington**
    556 Peninsula Boulevard
    Hempstead, NY 11550
    *Attorneys for Plaintiff*

    Leo Dorfman, Esq.
    Sanjana Biswas, Esq.
    **Sokoloff Stern LLP**
    179 Westbury Avenue
    Carle Place, NY 11514
    *Attorneys for Defendants*

**WICKS**, Magistrate Judge:

Plaintiff Arthur Williams commenced this action against Defendants East Meadow Union Free School District ("District"), Matthew Melnick, Scott Eckers, Alisa Baroukh, Eileen Napolitano, Joseph Parisi, Marcee Rubenstein, Melissa Tell, Dr. Kenneth Card, and Dr. Patrick Pizzo (collectively, "Defendants") alleging various violations pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et. seq.*; 42 U.S.C. §§ 1981, 1983; the New York State Human Rights Law, Exec. L. § 296; and the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 621 *et seq*. Specifically, he alleges that Defendants discriminated against him based on his race, color, and age, created a hostile work environment, and engaged in retaliatory acts. (ECF No. 1.)

Before the Court is Plaintiff's motion (ECF No. 43) (i) to compel Defendants to provide responsive documents and information to Plaintiff's requests and (ii) for sanctions against Defendants for the fees associated with this motion. Defendants strenuously oppose both requests. (ECF No. 45.) For the reasons stated below, Plaintiff's motion is **DENIED.**

## BACKGROUND

Plaintiff is a 62-year-old African American male. (ECF No. 1 ¶ 21.) He was employed at the District as an Assistant Business Administrator from 2005 to 2009. (*Id*. ¶¶ 22-24.) In 2016 Defendant Patrick Pizzo, a Caucasian male and District Assistant Superintendent for Business and Finance, encouraged him to apply for a position as Assistant to the Superintendent for Administration and Special Projects and Plaintiff was subsequently hired for that role. (*Id*. ¶¶ 20, 25.) However, Plaintiff heard that Pizzo wanted Plaintiff to be unsuccessful and wanted to personally choose Plaintiff's replacement. (*Id*. ¶ 27.) However, Plaintiff performed well, but his work environment became hostile and he was treated differently than his white counterparts and was subjected to excessive scrutiny and performance evaluations. (*Id*. ¶¶ 28, 33, 38, 46.)

Following the Superintendent's retirement, Pizzo made a series of discriminatory comments, continuously telling Plaintiff he was too old for the job. (ECF No. 1 ¶¶ 31-32.) He was also berated in front of other employees. (*Id*. ¶ 34.) When Plaintiff attempted to report Pizzo's conduct, Pizzo's acts became worse. (*Id*. ¶ 35.) For example, Pizzo routinely made comments that Plaintiff does not "fit in" and even issued Plaintiff a disciplinary write-up in retaliation for the complaint against him. (*Id*. ¶ 36.)

Plaintiff was soon placed on a performance improvement plan by Pizzo who had the sole intention to fire him. (ECF No. 1 ¶ 44.) In December 2018, Plaintiff received a letter from District Superintendent Defendant Kenneth Card stating his intention to recommend that Plaintiff be terminated to the Board of Education. (*Id*. ¶ 46.) The Board terminated him in April 2019, citing "the health and safety of school children" as the reason.[1] (*Id*. ¶¶ 48-49.)

When Plaintiff attempted to reap his employment benefits post-termination, however, Defendants hindered him by presenting him with a settlement agreement and other documents that would essentially strip him of his benefits and subsequent rights to challenge Defendants' conduct. (ECF No. 1 ¶¶ 53-54, 56.)

Plaintiff filed a New York State Division of Human Rights Charge of Discrimination against Defendants on June 12, 2019 for Defendants' discriminatory conduct. (ECF No. 1 ¶ 75.) The Division stated that there was "probable cause" to believe that Defendants engaged in discriminatory practices. (*Id*. ¶ 76.) Plaintiff subsequently dismissed his administrative cases and filed suit in this Court on June 11, 2021. (ECF No. 1.) An Initial Conference was held before the undersigned on September 8, 2021 at which point the Court entered a scheduling order for discovery. (ECF Nos. 13-14.) Discovery was extended several times (ECF Nos. 19, 21, 27, 29, 30; Electronic Order dated Dec. 5, 2022 and Sept. 30, 2023.) Fact discovery finally closed on April 1, 2024. (Electronic Order dated Feb. 19, 2024.) The undersigned held a settlement conference with the parties, but such efforts were unsuccessful. (Electronic Order dated May 28, 2024.) The Court set expert discovery dates and deadlines following this conference. However,

---

[1] This reason likely stemmed from Defendants' allegation that Plaintiff was an "unresponsive employee" when there was a sink hole on the District's property and a broken hinge on a school gate in 2018-2019. (ECF No. 1 ¶ 44.) However, Plaintiff states that Defendants fail to realize that Plaintiff was abiding by the bureaucratic procedures in place and nevertheless addressed the issues as best he could. (*Id.*)

weeks later, Plaintiff again requested an extension, which was granted and all discovery was to conclude by October 2, 2024. (ECF No. 42.)

Plaintiff now requests an Order compelling Defendants to provide documents and information for Plaintiff's requests and to sanction Defendants for reimbursement of fees and costs associated with making the instant motion. (ECF No. 43.) Plaintiff claims he served his second set of interrogatories and document demands upon Defendants[2] on January 18, 2024 and renewed the request for those demands on March 24, 2024. (*Id.* at 2.) He then followed up on the requests on June 10 and June 26, 2024. (*Id.*) On June 26, 2024, Defendants' counsel stated he was working on the request and that Plaintiff may receive the information upon his return from vacation and mentioned that the information sought was irrelevant to the case at bar. (*Id.*) Nearly a month thereafter, Defendants provided only incomplete responses to the requests, including six documents. (*Id.*) Plaintiff is particularly concerned that the document production is incomplete given that in one of the six documents received, the Superintendent refers to emails related to another teacher's immoral conduct. (*Id.*) Upon reading this, Plaintiff requested those emails, but Defendants stated that teacher was

> not a valid comparator, as she was subject to a different set of rules, regulations, workplace protections, and supervisors. She worked under a different superintendent and a different school board. The emails underlying the parent complaint against her have no bearing on this case. Plus, fact discovery is closed, and Plaintiff already has more than enough information on this teacher. The requests are not relevant to any claim or defense, they are not proportional to the needs of the case, and they implicate sensitive and confidential student matters.

---

[2] The specific request at issue is:

> Provide true and accurate copies of all non-privileged communications, including but not limited to emails and writings, that pertain to the resignation and/or termination of Jessica Bader from East Meadow Union Free School District.

(ECF No. 43 at 13.)

4

(*Id*. at 2-3.)  Plaintiff responded that the information was discoverable and relevant in light of the deposition testimony that other personnel had been discharged under the same or similar circumstances as Plaintiff—Ms. Bader is just one example.  (*Id*. at 3.)  The simple fact that she "was allowed to resign after having endangered the welfare of a minor and admittedly having had an inappropriate relationship with a student is only part of the concern. The balance includes that the District signed off on her resignation without being treated as [Plaintiff] has been treated."  (*Id*.)  Plaintiff demanded the documents by July 29, 2024 and forewarned Defendants that if he did not receive them by then, he would seek Court intervention.  (*Id*.)  Plaintiff in turn argues that the request is not vague, overinclusive or broad.  (*Id*. at 4.)

Plaintiff avers that Defendants have not brought forth specific objections or stated the grounds for withholding documents, including privilege.  (ECF No. 43 at 4.)  To date, the documents have not been provided and it is not up to Defendants to state whether Plaintiff has enough information.  (*Id*. at 4-5.)  Plaintiff's counsel reached out to Defendants' counsel a final time before filing this motion.  Defendants' counsel requested a time to speak with Plaintiff's counsel and also requested a response to questions raised about "the production of these 20 year-old records."  (*Id*. at 5.)  Plaintiff stated in light of Defendants' counsel's email and Plaintiff's counsel's unavailability to meet, Plaintiff does "not belie[ve] that any further conferring will [] be fruitful."  (*Id.*)

Defendants oppose stating that (1) the documents sought are confidential and highly sensitive and additionally have no bearing on Plaintiff's claims here, and (2) the motion is untimely since fact discovery has since closed.  (ECF No. 45 at 1.)  The documents sought are from 2005, "did not involve any Defendants," and implicates confidential student records including emails between a former teacher and student protected by the Family Educational

5

Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g).  (*Id*. at 1, 4-5.)  Defendants contend that they have produced documents showing all key facts related to this teacher demonstrating "who the teacher was, her position, what she allegedly did, who in the District handled the situation, and how they handled it." (*Id*. at 1, 4.)  In any event, that teacher's employment differed greatly from Plaintiff's here and are not comparable for purposes of proving his claim since "she was subject to a different set of performance and discipline standards, and workplace protections." (*Id*. at 2-3.)

Defendants additionally claim that the motion for fees is baseless since Plaintiff waited months after fact discovery closed to raise these issues and failed to meet and confer as required. (ECF No. 45 at 2, 5.)

## DISCUSSION

Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401).  Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92-CV-8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06-CV-460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16,

6

2007) ("[T]he party seeking discovery bears the burden of initially showing relevance."). To that end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

It is beyond peradventure that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

As the parties are aware, the Federal Rules of Civil Procedure, the Local Civil Rules of this Court, and the undersigned's Individual Practice Rules concomitantly require that parties meet and confer in a good faith attempt to resolve discovery disputes before formally initiating motion practice or raising disputes with the Court. *See* Individual Practice Rule 3.A; Local Civil Rules 26.4, 37.3(a); Fed R. Civ. P. 37(a). This requires the parties to:

> Meet, *in person or by telephone*, and make a *genuine effort* to resolve the dispute by determining: (i) what the requesting party is actually seeking; (ii) what the discovering party is reasonably capable of producing that is responsive to the request; and (iii) what specific genuine issues, if any, cannot be resolved without judicial intervention.

*Excess Ins. Co. v. Rochdale Ins. Co.*, No. 05-CV-10174, 2007 WL 2900217, at *12 (S.D.N.Y. Oct. 4, 2007) (emphasis added) (explaining the meet and confer requirement).

It is apparent from the instant application that the parties have not made a meaningful effort to meet and confer prior to raising this dispute with the Court. Indeed, Plaintiff's counsel himself stated that he did not confer with Defendants' counsel before filing the motion because

7

he thought such efforts would "not be fruitful." (ECF No. 43 at 5.) That said, there is no exception to the "meet and confer" obligations as a precondition to filing discovery motions.

Notwithstanding the failure to meet and confer, as to the document request itself, although Defendants have not identified the burden in producing the confidential documents, Plaintiff has not satisfied *his* burden demonstrating relevance. The documents appear to be approximately 20 years old and that teacher, who is allegedly a comparator in this case, experienced vastly different treatment than Plaintiff here. In addition, the incident surrounding that teacher's resignation occurred under a different administration—that is, completely different supervisors than those in the present case. *See Ruiz v. County of Rockland,* 609 F.3d 486, 493-94 (2d Cir. 2010) (stating that a comparator for disparate treatment purposes must be similarly situated to plaintiff "in all material respects"); *Crowley v. Billboard Magazine*, 576 F. Supp. 3d 132, 145 n.5 (S.D.N.Y. 2021) (denying plaintiff's motion to compel discovery because plaintiff did not establish appropriate comparators); *Johnson v. Riverhead Central School District*, CV 14-7130 (DRH) (AKT), 2016 WL 4507002, at *10 (E.D.N.Y. Aug. 26, 2016) ("Plaintiff's counsel has not provided information tending to show that Plaintiff and the identified employees are similarly situated, Plaintiff has not established the relevance of the personnel files. Accordingly, Plaintiff's application to compel production of the personnel files is DENIED."). Separately, Plaintiff has not shown what the documents requested would show in addition to what he already has been given by Defendants. (ECF No. 45 at 4) (stating that Defendants produced documents demonstrating "who the teacher was, her position, what she allegedly did, who in the District handled the situation, and how they handled it.") The varying conditions between this alleged comparator and Plaintiff are significant and therefore the motion to compel is denied.

8

Regarding Plaintiff's motion for sanctions, Plaintiff has not shown that Defendants violated any discovery obligation at this juncture, therefore the motion for sanction is denied. *See Perkins v. Chelsea Piers Mgmt.*, 11 Civ. 8998 (ALC) (JCF), 2012 U.S. Dist. LEXIS 146719, at *3 (S.D.N.Y. Oct. 10, 2012) (denying motion to compel where movant failed to demonstrate relevance of the documents sought and likewise deny motion for sanctions); *Ceglia v. Zuckerberg*, 10-CV-00569A(F), 2012 U.S. Dist. LEXIS 62296, at *3 (W.D.N.Y. May 3, 2012) ("Courts have permitted parties to recover attorney's fees, including costs and attorney's fees associated with either *successfully* making or opposing a motion to compel discovery, as well as those incurred in connection with preparing and defending applications for the expenses.") (emphasis added).

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion to compel and for sanctions (ECF No. 43) is **DENIED**.

Dated: Central Islip, New York
September 16, 2024

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

9