UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ARTHUR WILLIAMS,

        Plaintiff,

-against-

EAST MEADOW UNION FREE SCHOOL
DISTRICT *et al.*,

        Defendants.
------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
2:21-CV-03310-NJC-JMW

**A P P E A R A N C E S:**

    Albert Darnell Manuel, III
    Cobia Malik Powell
    Frederick K. Brewington
    **Law Offices of Frederick K. Brewington**
    556 Peninsula Boulevard
    Hempstead, NY 11550
    *Attorneys for Plaintiff*

    Leo Dorfman
    Mark A. Radi
    Sanjana Biswas
    **Sokoloff Stern LLP**
    179 Westbury Avenue
    Carle Place, NY 11514
    *Attorneys for Defendants*

**WICKS,** Magistrate Judge:

Following the depositions of Plaintiff's expert witnesses – one economist, the other a clinical psychologist – and after the deadline for completion of all discovery, Plaintiff "supplemented" the two experts' reports. The question presented here is whether these belated modifications to the expert reports are within the scope of the original reports or expound new and different theories or approaches that deviate from the prior reports.

1

Plaintiff Arthur Williams ("Plaintiff") commenced this action against Defendants East Meadow Union Free School District, Matthew Melnick, Scott Eckers, Alisa Baroukh, Eileen Napolitano, Joseph Parisi, Marcee Rubenstein, Melissa Tell, Dr. Kenneth Card, and Dr. Patrick Pizzo (collectively, "Defendants") alleging various violations pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et. seq.*; 42 U.S.C. §§ 1981, 1983; and the New York State Human Rights Law, Exec. L. § 296; 29 U.S.C. § 621 *et seq*. In short, Plaintiff asserts that Defendants discriminated against him based on his race, color, and age, created a hostile work environment, and engaged in retaliatory acts. (*See generally* ECF No. 1.) The Final Pretrial Conference is scheduled before the Hon. Nusrat J. Choudhury on January 21, 2025. (Electronic Order, Dec. 14, 2025.)

Before the Court is Defendants' motion (ECF No. 57) to strike supplemental expert reports from two experts—Dr. Michael J. Vernarelli ("Vernarelli") and Dr. Darlene Powell Garlington ("Garlington")—as untimely. Plaintiff strenuously opposes this request. (ECF No. 61.) For the reasons stated below, Defendants' motion to strike is hereby **GRANTED**.

## BACKGROUND

Plaintiff was formerly employed at Defendant East Meadow Union Free School District where he allegedly endured a hostile work environment, was subjected to discriminatory comments and conduct, and suffered disparate treatment on account of his race and age. (*See* ECF No. 1 at ¶¶ 20-25, 28, 33, 38.) In 2016 Defendant Patrick Pizzo, District Assistant Superintendent for Business and Finance, encouraged Plaintiff to apply for a position as Assistant to the Superintendent for Administration and Special Projects, for which he was subsequently hired. (*Id.* at ¶¶ 20, 25.) Plaintiff performed well in that role, but his work environment became hostile, claiming he was treated differently than his white counterparts and was subjected to excessive

2

scrutiny and performance evaluations. (*Id.* ¶¶ 28, 33, 38, 46.) Following the Superintendent's retirement, Pizzo made discriminatory comments on account of Plaintiff's age and race and such conduct worsened upon Plaintiff attempting to report the conduct. (*Id.* at ¶¶ 31-32, 35.) Pizzo placed Plaintiff on a performance improvement plan, and ultimately Pizzo terminated Plaintiff from his position. This lawsuit ensued. (*Id.* at ¶¶ 44, 46, 48-49.)

An Initial Conference was held before the undersigned on September 8, 2021 at which a scheduling order was entered. (ECF Nos. 13-14.) Needless to say, discovery deadlines were extended numerous times for a host of reasons throughout the protracted history of this case (ECF Nos. 19, 21, 27, 29, 30; Electronic Orders dated Dec. 5, 2022 and Sept. 30, 2023), with the coda of fact discovery eventually concluding on April 1, 2024. (Electronic Order dated Feb. 19, 2024.) The undersigned then held a settlement conference with the parties, which was unsuccessful in resolving the dispute. (Electronic Order dated May 28, 2024.) Since no resolution was achieved, the undersigned set *final* dates and deadlines, and, relevant here, the end date of all expert discovery was August 16, 2024. (*Id.*) In this Order, the undersigned made clear that "These dates are **<u>FINAL</u>**." *Id.* (emphasis in original.)

Notwithstanding the "finality" of these dates, following a Status Conference before the undersigned on July 10, 2024 (ECF No. 42), the dates were extended so that expert in chief reports were due no later than July 15, 2024, rebuttal reports were due no later than September 11, 2024, and the end date of all expert discovery was **October 2, 2024**. (*Id.*). Notably, the undersigned again forewarned the parties that **"[t]his will be the final extension of discovery dates and deadlines."** *Id.* (emphasis in original).

Relevant here, Vernarelli, Plaintiff's forensic economist expert, submitted his initial expert report on August 16, 2022 and, following his deposition, produced his supplemental report on

3

October 14, 2024. (ECF No. 57 at p. 2.) Similarly, Garlington, a clinical psychologist, submitted her initial report on July 12, 2024, was deposed by Defendants on October 2, 2024, and then submitted a supplemental expert report on November 6, 2024. (*Id.*) Both supplemental reports were served well after the final expert discovery deadline.

Consequently, Defendants filed the instant motion to strike both supplemental reports pursuant to Federal Rule of Civil Procedure 37, claiming they are not only late, but go beyond permissible scope of supplemental expert reports. (ECF No. 57.) The undersigned directed opposition to be filed on or before December 23, 2024. (Electronic Order dated December 11, 2024.) Oral argument was originally scheduled, but later cancelled, following a conflict raised by Plaintiff. (Electronic Order dated Jan. 13, 2025.) Plaintiff timely filed opposition to the motion on December 23, 2024. (ECF No. 61.)

**A. The Supplemental Expert Reports**

***The Vernarelli Reports:***

Vernarelli's initial and supplemental reports were prepared for purposes of calculating lost back pay and front pay for Plaintiff as a result of his allegedly wrongful termination. (ECF No. 57-4 at p. 5.) On October 14, 2024, Vernarelli amended his initial report originally submitted on August 16, 2022. (ECF No. 57-1 at p. 4.) In his amended expert disclosure,[1] Vernarelli states that during his deposition he realized that the Social Security benefits Plaintiff was receiving needed to be deducted as mitigating income for lost back pay and lost front pay through Plaintiff's projected retirement date. (*Id.*) Particularly, in the deposition, Vernarelli stated he committed a "big oversight" and there was "an error that I discovered" in not taking into account these benefits in calculating either back pay or front pay. (ECF No. 61-1 at p. 3.) Vernarelli noted that his calculation

---

[1] Vernarelli, in his amended report, notes that other than the Social Security damages recalculation, no other substantive changes were made to his initial report. (*See* ECF No. 57-1 at p. 4.)

4

method was wrong because he did not account for the fact that this is a civil rights/discrimination case and not a personal injury case where social security benefits ordinarily are not an offset until post-verdict. (*Id.*)

Moreover, Vernarelli failed to, but now admits he needed to, account for the higher Social Security benefits Plaintiff would receive upon turning 70—his projected age of retirement. (ECF No. 57-1 at p. 4.) As Vernarelli stated, this meant Plaintiff's pre-retirement damages should be lower while his post-retirement damages should be higher. (*Id.*) Indeed, Vernarelli initially concluded Plaintiff was entitled to lost earnings (back and front pay) of $892,308 and lost pension benefits (front pay) of $296,475. (ECF No. 57-4 at p. 8.) Conversely, in his amended report, after taking into account the Social Security benefits, Vernarelli determined Plaintiff's lost earnings (back and front pay) should be $702,848 while his lost pension benefits (front pay) should be $545,192, thereby increasing the total damage assessment by $59,257.00. (ECF No. 57-1 at p. 9.)

### *The Garlington Reports:*

Garlington submitted her initial report on July 12, 2024 following a psychological interview of Plaintiff to assess his mental and emotional well-being. (ECF No. 57-3 at pp. 2-3.) In this report, Garlington concluded Plaintiff suffered from PTSD with co-occurring depression and anxiety, referencing bouts of low confidence and cognitive difficulties like inability to focus or recall events. (ECF No. 57-3 at p. 12.) Garlington also noted that PTSD is a "disease of non-recovery" and concluded that symptoms "do not dissipate or become manageable to be able to function as the individual did prior to the trauma." (*Id.* at pp. 12-13.)

Her amended report, submitted on November 6, 2024, altered her diagnosis after reviewing the medical findings of Dr. Glasman—a neurologist who began treating Plaintiff in 2022—and Dr. Weber— who conducted a neuropsychological consultation with Plaintiff on August 11, 2022. (*See*

ECF No. 61-4 at pp. 4-5.) Glasman diagnosed and treated Plaintiff for "mild cognitive impairment" and eventually updated it to "dementia with unspecified severity without behavioral disturbance, psychotic disturbance, mood disturbance and anxiety." (*Id.* at p. 4.) Weber diagnosed Plaintiff with "unspecified dementia with behavioral disturbance" after noting a slow and continuous progression of cognitive decline and corresponding symptoms. (*Id.*) Consequently, Garlington concluded that Plaintiff developed Complex PTSD ("CPTSD") largely because of the ongoing nature of the traumatic experiences. (*Id.* at p. 5.)

### B. The Parties' Arguments

#### i. *Defendants' Arguments as to Striking the Supplemental Reports*

Defendants move to strike both supplemental reports because they are untimely[2] and because this case is in the *Daubert* and summary judgment briefing stage, thus reopening discovery on these experts' new information would prejudice Defendants through increased costs and delays. (*See* ECF No. 57 at pp. 1-3.) In particular, Vernarelli had ample opportunity to "update and revise" his initial findings as he had access to Plaintiff's financial information for calculating damages, specifically Social Security damages, yet has failed to indicate *why* he did not revise his initial report sooner, "much less before discovery closed." (*Id.* at pp. 2-3.) Furthermore, Defendants posit that Vernarelli "significantly altered his prior damages assessment" by lowering Plaintiff's pre-retirement damages while increasing post-retirement damages. (*Id.* at p. 2.)

With respect to Garlington,[3] Defendants aver that she "drastically revised" her conclusions after taking into account Plaintiff's prior medical and psychological treatment records. (*Id.*) As

---

[2] Vernarelli submitted his supplemental report three months after the July 15, 2024 deadline, and two weeks after his deposition and the close of discovery.

[3] Garlington submitted her supplemental report on November 6, 2024, roughly four months after the July 15, 2024 deadline and over one month after her deposition and close of discovery.

6

such, her supplemental report, Defendants contend, "put[s] forward entirely new theories on which Defendants have had no discovery at all." (*Id*. at p. 3.) With this new diagnosis, Defendants argue that the scope of the first report expanded and is now inconsistent with the initial report. (*Id.*)

      ii.      *Plaintiff's Arguments in Opposition to the Motion to Strike*

Plaintiff contends that the supplemental reports were a direct result of information raised at the experts' respective depositions, ones scheduled for the last and second to last day of expert discovery. (ECF No. 61 at p. 2.) As such, Plaintiff was properly submitting revised reports and "supply[ing] Defendants with accurate, updated reports." (*Id.* at p. 3.) Plaintiff specifically argues that Vernarelli's supplemental report was in direct response to his realization during his deposition that his Social Security calculation was "not fully accurate." (*Id.* at p. 2.) Moreover, as alleged, his initial report did not account for the higher Social Security benefits Plaintiff would have received upon retirement at 70 years old. (*Id.* at p. 4.) Such a drastic change in damages, as Plaintiff contends, "is a reflection of the accurate calculations." (*Id.*) Similarly, as argued, Garlington amended her report to provide a "fair and accurate depiction of Plaintiff's psychological state" after learning, during her deposition, of prior medical reports diagnosing Plaintiff with dementia. (*Id.* at pp. 2, 4.)

## **DISCUSSION**

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony and is designed to prevent a party from raising unexpected or new evidence at trial. *Fung-Schwartz v. Cerner Corp.*, No. 17-CV-0233 (VSB) (BCM), 2020 WL 8771329, at *2 (S.D.N.Y. Nov. 16, 2020) (citation omitted). To prevent against this type of surprise, an expert is required to disclose a written report, prepared and signed by the witness, containing certain information like the expert's opinions, facts and data relied on, and prior experience as an expert in other cases. *See* Fed. R. Civ.

P. 26(a)(2)(B). Indeed, a party must make these disclosures "at the times and in the sequence that the court orders." *U.S. v. City of New York*, 637 F. Supp. 2d 77, 106 (E.D.N.Y. 2009) (citing Fed. R. Civ. P. 26(a)(2)(D)).

The expert discovery dates set in this case have been on a continuum of extensions. At no point in time did Plaintiff file an application with the Court to serve belated supplemental expert reports.

Rule 26(e)(2) clearly states: "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Notably, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed R. Civ. P. 37(c)(1); *see Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) (noting trial courts "have discretion to determine whether or not a substantial justification exists and whether or not the failure to disclose is harmless.").

Following the conclusion of expert discovery, an expert's supplemental report may be submitted if it is "within the scope of the initial expert report." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.*, 769 F. Supp. 2d 269, 279–80 (S.D.N.Y. 2011) (allowing an expert's supplemental affidavit as it "provided evidentiary details for the conclusions originally espoused in [the expert's] report—which remain unchanged—and is thus properly within the scope of that report."); *see also Washington v. Kellwood Co.*, No. 05-CV-10034 (SN), 2016 WL 3920348,

8

at *19 (S.D.N.Y. July 15, 2016) ("Experts can update their conclusions after discovery, but their updated conclusions must be consistent with the methods used in the expert report.")

Conversely, courts "will not admit supplemental expert evidence following the close of discovery when it expounds a wholly new and complex approach designed to fill a significant and logical gap in the first report." *Cedar Petrochemicals*, 769 F. Supp. 2d at 269 (internal quotations and citation omitted). To allow such new evidence to be presented would undermine the purpose of the discovery rules, circumvent the discovery schedule that was ordered by the court, and prejudice a plaintiff. *City of New York*, 637 F. Supp. 2d at 108. Indeed, "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions." *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 211 (S.D.N.Y. 2021). As such, an expert's supplemental report "that does not rely on any information that was previously unknown to him or her is not an appropriate supplemental report . . . ." *Id.* (quoting *Lidle v. Cirrus Design Corp.*, No. 08- Civ. 1253 (BSJ) (HPB), 2009 WL 4907201, at *5–6 (S.D.N.Y. Dec. 18, 2009). "It is only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete, that the duty to supplement arises." *Lidle*, 2009 WL 4907201, at *6.

Here, as to Vernarelli, though his amended report seeks to clarify an "inaccurate" calculation, nothing in the record indicates that the Social Security damages were "unknown or unavailable" to him. In fact, Vernarelli had access to all of Plaintiff's financial information, including Social Security damages, when he formed his initial report. Additionally, Plaintiff seeks to submit Vernarelli's supplemental report in order to correct his flawed approach to his damages calculation. At bottom, Vernarelli's inaccurate damages calculation resulted from his utilization of

9

a damages calculation tailored towards personal injury cases, not civil rights or discrimination cases. Having chosen to utilize an incorrect methodology in calculating damages, as Vernarelli has done here, does not warrant admitting a supplemental report aimed at correcting that flawed method. *See Hernandez v. Money Source Inc.*, No. 17-cv-6919 (GRB) (AYS), 2022 WL 2702894, at *7 (E.D.N.Y. July 12, 2022) (rejecting a supplemental report devising an entirely new methodology and where no explanation was offered for the alteration); *but see Sitts v. Dairy Farmers of Am., Inc.*, No. 16-CV-287, 2020 WL 3467993, at *3 (D. Vt. June 24, 2020) (permitting a supplemental report where the expert used the "same [mathematical formula] he previously employed to reanalyze the data."). That is, he charted his methodology course, upon which Defendants thereafter relied.

For instance, in *Mirkin v. Xoom Energy, LLC*, the court rejected a plaintiff's attempt to supplement an expert's report on damages because the expert "use[d] different methodology and measures different concepts than does her original report." No. 18-CV-2949 (ARR) (JAM), 2024 WL 4143376, at *10 (E.D.N.Y. Sept. 11, 2024). There, the amended report advanced an "untimely damages model that [was] wholly distinct from the one within her original report" as the amended report advanced a new damages formula contrary to what was in the original report. *Id.* at *9. In fact, the amended report attempted to correct the expert's methodological errors—errors related to how the expert calculated damages—made in the first report by substituting in a different formula. *Id.* at *10. Accordingly, the court granted the motion to exclude the amended report as untimely after concluding that although "mistakes in arithmetic can be corrected", a "mistake of using an unreliable methodology" cannot be. *Id.*

Here, like the expert in *Mirkin*, Vernarelli seeks to implement a different methodology—a new formula tailored towards civil rights and discrimination cases—than what he utilized in

10

forming his original report. Moreover, as in *Mirkin*, this dispute does not present a situation of newly disclosed or discovered information, but rather involves an expert realizing his methods were flawed and his subsequent pursuit to fix them. That, of course, is not grounds for a "do-over". Allowing the supplemental report under these circumstances would undermine the expert discovery process and this Court's firmly established timetables.

With respect to Garlington, she was allegedly unaware of the prior reports and examinations of Plaintiff that formed the basis of her supplemental report. Indeed, Defendants aver Garlington "drastically revised her findings to account for Plaintiff's prior dementia diagnosis and past medical/psychological treatment records, which Dr. Garlington did not know about prior to deposition." (ECF No. 57 at p. 2.) (emphasis added). Here, however, Garlington offers several new diagnoses in her amended report, like CPTSD and dementia, that stretch far beyond the scope of her conclusions enunciated in her initial report. *See Coene v. 3M Co.*, 303 F.R.D. 32, 42 (W.D.N.Y. 2014) ("Although Rule 26(e) does not itself define the word supplement, common sense suggests (and numerous decisions confirm) that an expert report that discloses new opinions is in no way a mere supplement to a prior request.") (internal marks and citations omitted).

Indeed, Garlington's supplemental report offers new medical opinions and conclusions, rather than clarifying or elucidating the conclusions in her original report. *See Alan L. Frank Law Assocs., P.C. v. OOO Rm Invest.*, No. 17-CV-1338 (NGG) (ARL), 2021 WL 1906468, at *3–4 (E.D.N.Y. May 12, 2021) (permitting supplemental expert evidence submitted after discovery deadlines where the report contained "no new substantive evidence, analytical approaches, or opinions," but rather made general assertions intended to clarify certain assumptions forming the basis of the initial report). Importantly, a second or supplemental report should be rejected where it "does not correct [the expert's] previous theories, but instead constitutes a new opinion" and sets

11

forth additional conclusions. *Coene*, 303 F.R.D. at 43; *see City of New York*, 637 F. Supp. 2d at 107–08 (granting the motion to strike a doctor's supplemental expert report as it contained new conclusions, suggesting that the new conclusions were "constructed to fill holes in the evidence that [defendant] failed to gather during discovery . . . ."); *see also Assoc. Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp.*, No. 3:11-CV-715 (JCH), 2013 WL 4456640, at *4 (D. Conn. Aug. 16, 2013) (permitting the supplemental report as it "d[id] not advance new theories of liability or undermine the original report's conclusions."). And that is what was done here.

In considering whether to preclude supplemental expert reports under Federal Rule 37(c)(1), courts, in exercising their discretion, consider four factors: (1) the party's explanation for the delay in advancing the new evidence; (2) the importance of the precluded evidence or document; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance. *Softel, Inc. v. Dragon Med. And Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (referencing *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir. 1988)); *see Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (reiterating the same factors). Courts often consider the *Softel* factors in determining whether to allow expert opinions that were not disclosed in reports served during the court authorized discovery period. *Canales v. United States*, No. 19-CV-834 (EK), 2021 WL 1588809, at *5 (E.D.N.Y. Apr. 22, 2021). None of these factors are dispositive and each factor is to be balanced against the others in making the determination. *Sherman v. Bear Stearns Co.*, 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017) (citation omitted). The Court considers each factor in turn.

12

i.  *The Party's Explanation for the Delay in Advancing the New Evidence*

Plaintiff, the "delaying" party, avers that there was in fact no delay here as it complied with the original discovery order and merely served the supplemental report following the expert's learning of new information during their depositions. (ECF No. 61 at p. 5.)

With respect to Vernarelli, Plaintiff offers no explanation as to why Vernarelli did not account for Social Security damages in his initial report before discovery closed, or why these damages were unknown to him during his analysis. In fact, Vernarelli had access to this financial information when he formed his initial report. Rather, in conclusory fashion, Plaintiff states that Vernarelli realized the Social Security benefits needed to be deducted and that he did not take them into account. (*Id.* at p. 4.) Plaintiff's failure to offer any explanation weighs in favor of precluding Vernarelli's report. *See Speedfit LLC v. Woodway USA, Inc.*, No. CV 13-1276 (KAM) (AKT), 2019 WL 1429609, at *6 (E.D.N.Y. Mar. 28, 2019) (noting the first *Softel* factor weighed in favor of precluding an expert's report on damages where "no viable explanation" was offered for why a previous damages calculation was wrong and not subsequently addressed before the close of discovery).

As to Garlington, it is argued that she did not know about the other expert's reports before she was deposed, namely because Plaintiff allegedly withheld medical information from her. (*See* ECF No. 57 at p. 3.) However, Garlington had numerous opportunities to ascertain this information as the discovery schedule was extended at several different points during this almost four-year litigation. Notably, Plaintiff offers nothing to the Court explaining *why* Garlington could not obtain this new evidence before examining Plaintiff herself, or even before the end of the already drawn out and extended expert discovery period. This factor, therefore, favors precluding Garlington's report. *See Peerless Network, Inc. v. AT&T Corp.*, No. 15-CV-870 (VM) (VF), 2022 WL 3700141,

13

at *5 (S.D.N.Y. Aug. 26, 2022) (finding the first *Softel* factor favored preclusion where plaintiff failed to adequately explain why the supplemental evidence could not have been produced earlier, especially during the discovery period); *see also Lidle*, 2009 WL 4907201, at *6–7.

      ii.    *Importance of the Precluded Evidence*

Plaintiff states "the reports of each witness are important as each are crucial to different elements of Plaintiff's damages." (ECF No. 61 at p. 5.) This factor favors admitting Vernarelli's report because an alteration in the amount of damages awarded to Plaintiff correlates with an importance of the evidence. *IBM Corp. v. Mirco Focus (US), Inc.*, No. 22 CV 9910 (VB), 2024 WL 3346078, at *2 (S.D.N.Y. July 8, 2024) (noting "evidence affecting a relatively small portion of the total damages may be sufficiently important" under the second *Patterson* prong to weigh against preclusion). Moreover, relevant to Garlington, previously conducted medical examinations and subsequent findings are important where, like here, they form the basis for a change in diagnosis. *See Polanco v. Active Retirement Community, Inc.*, No. CV 14-4145 (SJF) (ARL), 2015 WL 12564206, at *10 (E.D.N.Y. Dec. 21, 2015) (noting the medial report which was influential in diagnosing a medical condition was "of great import" under the second *Patterson* factor).

      iii.    *Prejudice Suffered by the Opposing Party*

Defendants contend that they stand to be significantly prejudiced if these expert reports are admitted as they would be deprived of a "full and fair opportunity to conduct discovery on the full range of their experts' opinions" and "on the experts' new theories." (ECF No. 57 at p. 3.) Conversely, Plaintiff merely states "there is no prejudice suffered by the opposing party." (ECF No. 61 at p. 5.)

This case is approaching four years since its commencement on June 11, 2021. During this time, numerous discovery disputes and requested extensions of time to complete discovery within

14

explicit timelines have plagued the docket. Currently, the parties are engaging in *Daubert* motion practice (ECF Nos. 49, 52), including *Daubert* motions directed at Garlington (ECF Nos. 50, 60), and have even begun the initial process of moving for summary judgment. (ECF Nos. 47, 49; Electronic Order dated December 9, 2024.) Moreover, a Final PreTrial Conference is scheduled for January 20, 2025, with trial dates to be set shortly thereafter. (Electronic Order dated November 12, 2024.) Allowing these supplemental reports would inevitably necessitate reopening expert discovery on damages and a new medical diagnoses, potentially leading to further depositions, reports, and motion practice, thereby resulting in increased time and resources to an already lengthy litigation that is nearing an end. *See Valelly v. Lynch*, No. 19-CV-7998 (VEC), 2024 WL 4476088, at *16 (S.D.N.Y. Oct. 11, 2024). Accordingly, the purported prejudice Defendants stand to suffer heavily favors preclusion. *See Shea v. Royal Enters., Inc.*, No. 09 Civ. 8709 (THK), 2011 WL 2436709, at *8 (S.D.N.Y. June 16, 2011) (noting the third *Outley* factor favored preclusion as allowing the two experts' supplemental reports would result in additional litigation costs, more time, the need for additional depositions, and inevitably supplemental motion practice in an already complicated two-year litigation).

      iv.    <u>*Possibility of a Continuance*</u>

Plaintiff argues these disclosures "should not result in a continuance because they do not substantially change the information that was available to Defendants, but do make each evaluation more accurate." (ECF No. 61 at p. 5.) Defendants reiterate their prejudice arguments in support of why this case should not be continued for expert discovery any longer. (*See* ECF No. 57 at p. 3.)

Here, a continuance is not appropriate as the case has been ongoing for almost four years, other discovery motions have been filed in addition to the current motion to strike, and discovery deadlines, particularly as to experts, have been continuously extended. *See Speedfit*, 2019 WL

15

1429609, at *7 (concluding a continuance was not warranted where there existed "numerous extensions of the discovery deadlines" over the course of the litigation). Also, expert discovery has been closed for over three months, another factor favoring preclusion. *See Kelly v. Beliv LLC*, No. 21-cv-8134, 2024 WL 1076217, at *8 (S.D.N.Y. Mar. 12, 2024) ("Moreover, notwithstanding the availability of a continuance, a continuance is not appropriate here because discovery is closed."); *but see Sportvision, Inc. v. MLB Advanced Media, LP*, No. 18-CV-03025, 2023 WL 8098780, at *5 (S.D.N.Y. Nov. 21, 2023) (noting preclusion was not appropriate where, among other things, a continuance was available because expert discovery remained open). Accordingly, this factor favors preclusion.

In sum, this Court, in weighing the *Softel* factors, finds that both the Vernarelli and Garlington supplemental reports are properly excluded. *See Canales*, 2021 WL 1588809, at *5 (denying plaintiff's motion to supplement expert reports where the report asserts "an entirely new theory of causation" that was not disclosed within the expert discovery period, substantial prejudice existed given the shifts in theories offered in the new report, and any further delay would be unreasonable given the numerous discovery extensions); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (concluding preclusion under Rule 37 was appropriate where the importance of the damages evidence was outweighed by the other *Softel* factors); *see also Spotnana, Inc. v. American Talent Agency, Inc.*, No. 09 Civ. 3698 (LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (precluding a supplemental report where the first, third, and fourth *Softel* factors favored preclusion and outweighed any importance of the evidence).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to strike the supplemental expert reports of Drs. Michael J. Vernarelli and Darlene Powell Garlington (ECF No. 57) is **GRANTED**.

Dated:   Central Islip, New York
        January 16, 2025

**S O  O R D E R E D:**

/s/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge