**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Arthur Williams,<br><br>Plaintiff,<br><br>-v-<br><br>East Meadow Union Free School District,<br>Matthew Melnick, *in his official and individual capacity*,<br>Scott Eckers, *in his individual and official capacity*,<br>Alisa Baroukh, *in her individual and official capacity*,<br>Elaine Napolitano, *in her individual and official capacity*,<br>Joseph Parisi, *in his individual and official capacity*,<br>Marcee Rubenstein, *in her individual and official capacity*,<br>Melissa Tell, *in her individual and official capacity*,<br>Dr. Kenneth Card, *in his individual and official capacity*,<br>and Dr. Patrick Pizzo, *in his individual and official capacity*,<br><br>Defendants. | 2:21-cv-3310<br>(NJC) (JMW) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Arthur Williams filed this action on June 11, 2021, bringing claims against

Defendant East Meadow Union Free School District (the "District") and the following Individual

Defendants: Scott Eckers, Alisa Baroukh, Elaine Napolitano, Joseph Parisi, Marcee Rubenstein,

and Melissa Tell, in their individual and official capacities as members of the District's Board of

Education (the "Board Member Defendants"); District Superintendent Dr. Kenneth Card; and

District Assistant Superintendent for Business and Finance Dr. Patrick Pizzo (together with the

Board Member Defendants, the "Individual Defendants"). (Compl. ¶¶ 10–20, ECF No. 1.) The

Complaint brings claims for disparate treatment on the basis of race, hostile work environment,

and retaliation under the following federal and state statutes: 42 U.S.C. § 1983 ("Section 1983");

Title VII, 42 U.S.C. § 200e-2(a)(1) ("Title VII"); and the New York State Human Rights Law, N.Y. Exec. L. § 296(1)(a) ("NYSHRL"). (*Id.*)[1] Williams brings Title VII claims against the District and claims under Section 1983 and the NYSHRL against both the District and the Individual Defendants, in their individual and official capacities. (*Id.*)

Before me is Defendants' Motion for Summary Judgment ("Motion"), in which Defendants seek summary judgment on all claims. (Mot., ECF No. 75.) I held oral argument on March 3 and March 9, 2026. After hearing argument, I granted in part and denied in part Defendants' Motion as to Williams' racial disparate treatment and hostile work environment claims under Title VII and Section 1983. Specifically, I denied summary judgment as to the following claims:

1. Williams' racial disparate treatment claims against the District under Title VII and Section 1983 for (a) the placement of Williams on a performance improvement plan, (b) terminating him from the role of Assistant to the Superintendent for Administration and Special Projects ("Facilities Director")[2] at the District, and (c) the termination of his retirement and health benefits due to the Board's offer to rescind the January 9, 2019 termination decision on the condition that Williams sign a proposed settlement agreement with terms set forth in a Memorandum of Understanding ("MOU").

2. Williams' racial disparate treatment claims under Section 1983 against Defendants Pizzo and Card for (a) placing Williams on a performance improvement plan, (b) their involvement in the Board's decision to terminate him from the role of Facilities Director at the District, and (c) the termination of his retirement and health benefits due to their

---

[1] The Complaint also brings claims under Title VI, 42 U.S.C. § 2000(d) ("Title VI"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. (Compl.) However, Williams withdrew his ADEA claims at oral argument on March 4, 2026, and his Section 1981 and Title VI claims in his opposition to Defendants' Motion to Dismiss. (Mem. L. Opp'n Defs.' Mot. Sum. J. ("Opp'n") at 1 n.1, 30, ECF No. 75-7.)

[2] As set forth on the record, Williams' official job title was Assistant to the Superintendent for Administration and Special Projects. However, Williams refers to his position as "Facilities Director" in his briefing and Rule 56.1 Statement. (Opp'n at 2; Pl.'s Counterstatement of Material Facts ¶ 4, ECF No. 64.) Defendants note that this was not Williams' job title, (Def.'s Resp. to Pl.'s Counterstatement of Material Facts ¶ 4, ECF No. 65), but I use the term as shorthand for Williams' formal title.

role in the Board's offer to rescind the January 9, 2019 termination decision on the condition that Williams sign a proposed settlement agreement with terms set forth in a MOU.

3. Williams' Section 1983 hostile work environment claim against Pizzo in his individual capacity.

(Min. Entry, Mar. 9, 2026.)

I also granted Defendants summary judgment on Williams' remaining racial disparate treatment and hostile work environment claims under Title VII and Section 1983 because Williams abandoned these claims for the reasons detailed at length in my oral opinion and order. Min. Entry, Mar. 9, 2026; *see Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, 628 F. Supp. 3d 501, 519 (S.D.N.Y. 2022) ("Federal courts have the discretion to deem a claim abandoned 'when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" (quoting *Hardy v. City of New York*, 732 F. Supp. 2d 112, 125 (E.D.N.Y. 2010) and collecting cases)), *aff'd*, No. 23-947, 2024 WL 2720235 (2d Cir. May 28, 2024). These claims include: (1)  Williams' racial disparate treatment claims for any other adverse employment actions, such as the issuance of counseling memoranda and any negative performance evaluations[3]; (2) Williams' hostile work environment claims under Title

---

[3] As I explained in my March 9, 2026 oral ruling, when asked at the March 3, 2026 argument to clarify the specific adverse employment actions being challenged in Williams' racial disparate treatment claim, counsel for Williams responded, "It is all, Judge. All." (Mar. 3, 2026 Argument Tr. ("Tr.") 3:12–16.) However, counsel did not identify on the record or in opposition to Defendants' motion for summary judgment any specific adverse actions preceding Williams' termination, that Williams challenged as disparate treatment, with the exception of his placement on a performance improvement plan. Because this failure placed on the Court the task of scouring the record to identify potential adverse actions alleged in Williams' testimony and the parties' 56.1 Statements, I construed any adverse actions not specifically identified by Williams in his opposition to the summary judgment motion as having been abandoned. *See CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) ("To be sure, the District Court is not required to scour the record on its own in a search for evidence when the plaintiffs fail to present it.").

VII and Section 1983 against the District, which are abandoned because Williams failed to respond to the *Faragher/Ellerth* defense asserted by the District in its Motion on those claims (*see* Mot. at 13–14); (3) Williams' racial disparate treatment and hostile work environment claims under Section 1983 against the Individual Defendants in their official capacities; (4) Williams' racial disparate treatment and hostile work environment claims under Section 1983 against the Board Member Defendants in their individual capacities; and (5) Williams' hostile work environment claim under Section 1983 against Defendant Card in his individual capacity.[4]

I now rule on the remainder of the Motion; which concerns Defendants' request for summary judgment on (1) Williams' retaliation claims under Title VII against the District and his retaliation claims under Section 1983 against all Defendants; (2) his claims for racial disparate treatment, hostile work environment, and retaliation under the NYSHRL against all Defendants; and (3) his request for punitive damages against all Defendants.[5] As set forth below, I grant Defendants' Motion with respect to these remaining claims.

---

[4] As I explained in the March 9, 2026 oral ruling, Williams' opposition to the Motion failed to respond to Defendants' argument that the official capacity claims are duplicative of claims asserted against the District. (*See* Mot. at 26; *see also generally* Opp'n at 3–15.) Williams also failed to respond to Defendants' argument that he had not identified evidence giving rise to a dispute of fact that Defendants Eckers, Baroukh, Napolitano, Parisi, Rubenstein, and Tell were each personally involved in the alleged racial disparate treatment and hostile work environment or that Card was personally involved in the allege hostile work environment. (*See* Mot. at 26; *see also generally* Opp'n at 3–15.)

[5] Defendants also argue that Williams abandoned his due process and conspiracy claims. (Reply Br. Supp. Mot. Sum. J. ("Reply") at 1, ECF No. 75-8.) The Complaint does not include separate causes of action for due process or conspiracy. Accordingly, I do not understand Williams to bring such claims. Moreover, Williams has not addressed any due process or conspiracy claims in his opposition brief or at oral argument, and I construe such claims to be abandoned to the extent they are raised in the Complaint. *See Now-Casting*, 628 F. Supp. 3d at 519.

## BACKGROUND

This action arises out of Williams' termination from his role as Facilities Director at the District effective April 11, 2026, and the events that precipitated Williams' termination. Williams is a Black man and brings the claims set forth in the Complaint alleging various forms of discrimination on the basis of race. (Defs.' 56.1 Statement ("SMF") ¶ 7, ECF No. 56.) I assume the parties' familiarity with the facts and procedural history of this action, which are incorporated in the analysis provided in my March 9, 2026 oral ruling. The following is a concise timeline of key events discussed in this Opinion.

Williams worked for the District over two separate time periods. Although there is some dispute regarding the dates and titles of some of Williams' positions during the first period of employment,[6] it is undisputed that the Board first hired Williams in around 2004 for a part-time or internship role, that he was promoted in around 2005, and that he received tenure in the position of Assistant Business Administrator in 2008. (SMF ¶ 32, 37, 38; Pl.'s 56.1 Counterstatement ("CSMF") ¶ 32, 37, ECF No. 64.) Williams resigned effective September 14, 2009, and left the District. (*Id.* ¶ 40.)

The events precipitating this action began when the Board, on recommendation of former Superintendent Leon Campo, hired Williams to perform the role of Facilities Director on September 1, 2016. (*Id.* ¶ 49.) At the time, Campo served as Superintendent and Pizzo served as Assistant Superintendent for Business and Finance. (*Id.* ¶ 15; Campo Aff. ¶ 3, ECF No. 63-14.)

Williams alleges that while he served as Facilities Director for the District, Pizzo shouted at and cursed him and called him "stupid," a "fucking moron," a "fucking asshole," and other

---

[6] Because these disputes of fact are not material to the issues here, I need not address them.

5

similar names on a "routine" basis, often in front of his subordinates. (Williams Dep. 181:15–18, 207:7–8, 209:22–210:2, 211:5–10, 213:13–16, ECF No. 63-3.) Williams alleges that, sometime in 2016 or 2017, he approached Campo about this conduct and said, "I feel that I have a situation I can't stand." (*Id.* 196:2–3.) Williams testified that on that occasion, he told Campo that Pizzo was "saying bad things about [him] in front of [his] people," "wasn't supportive," and Williams "need[ed] [Campo's] help to figure out how best [to] handle" the situation. (*Id.* 196:4–14.) Williams does not recall telling Campo anything else about the situation. (*Id.* 196:15–20.) Campo corroborated this testimony. (Campo Dep. 25:6–23.) He also testified that afterwards, he held a series of meetings with Williams and Pizzo, both together and individually, and when he "met with Pattrick Pizzo . . . alone, he would begin to disparage [Williams] racially, a lot of race . . . and a lot of animus, venom." (*Id.* 27:12–16.) Campo testified to several of these comments including that when Campo reminded Pizzo that he had made a commitment to mentor Williams, Pizzo responded, "you want me to make Art Williams a success. My commitment is to get . . . 'his big fat black ass out of East Meadow.'" (*Id.* 28:16–19.)

Campo retired from his position as Superintendent at the District in June 2017. (Campo Dep. 117:12–17.) Card became Superintendent in July 2017 and served as Superintendent for the remainder of the period in question. (SMF ¶ 10.) On December 6, 2018, Card advised Williams that he would be recommending to the Board that Williams be terminated from the role of Facilities Director, effective April 1, 2019. (Affidavit of Assistant Superintendent for Personnel and Administration Anthony Russo ("Russo Aff.") ¶ 16, ECF No. 55.) On January 9, 2019, the Board approved the termination, which would go into effect on April 1, 2019. (Russo Aff. ¶ 18.)

On March 1, 2019, Williams requested the Board's permission to resign effective April 1, 2019. (Russo Aff. ¶ 21.) Although the exact date is unclear, sometime thereafter the Board

6

offered to rescind the termination of Williams from his role and to accept his resignation on the condition that he execute a proposed settlement agreement. (*Id.* ¶ 22.) Under the terms of this settlement proposal, Williams would be bound by the "terms and conditions" of a Memorandum and Understanding effective July 17, 2017. (*See* Settlement & Release Agreement, ECF No. 54-37; MOU, ECF No. 53-32.) That MOU includes terms and conditions pertaining to health and retirement benefits. (MOU at 2–3, 8.)

On March 21, 2019, Williams requested to be placed on unpaid leave until April 11, 2019, so that he would have more time to consider the settlement proposal. (Russo Aff. ¶ 23.) Board minutes reflect that on March 27, 2019, the Board approved Williams' request for unpaid leave effective April 1, 2019, through April 11, 2019. (Defs.' Ex. NNNN, ECF No. 54-40.) The termination of Williams from the Facilities Director role went into effect on April 11, 2019 because Williams did not sign the Board's settlement proposal. (Russo Aff. ¶ 24.) This action followed.

### JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Williams brings claims under two federal statutes, Section 1983 and Title VII. The Court has supplemental jurisdiction over the state law claims alleged in the Complaint under 28 U.S.C. § 1367(a) because those claims are part of the same case or controversy as the federal claims.

Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the Amended Complaint alleges that a substantial part of the events that gave rise to Williams' claims occurred in this district. (Compl. ¶ 6.)

**LEGAL STANDARDS**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material question of fact. *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 219 (S.D.N.Y. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).[7] "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023), *rev'd on other grounds,* 145 S. Ct. 1020 (2025) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). Under this standard, if the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-cv-1220, 2024 WL 3264125, at *2 (2d Cir. July 2, 2024) (summary order). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks*, 593 F.3d at 166.

---

[7] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

8

A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant defendant only if we conclude that on the record presented, considered in the light most favorable to the non-movant plaintiff, no reasonable jury could find in the plaintiff's favor."). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

## DISCUSSION

### I.    Retaliation Claims Under Title VII and Section 1983

Under Title VII's antiretaliation provision, it is unlawful for an employer to "discriminate against [an employee] . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3. Courts apply the *McDonnell Douglas* framework to evaluate a motion for summary judgment on a Title VII retaliation claim. *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023). The plaintiff must first establish a prima facie case of Title VII retaliation by "demonstrat[ing] that (1) [he] engaged in protected activity, (2) the defendant was aware of that activity, (3) [the plaintiff] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr*, 76 F.4th at 180. To survive summary judgment, a plaintiff must demonstrate or at least raise a material question of fact as to each element of the prima facie case. *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010). Once the

plaintiff meets the minimal burden of making out a prima facie case, the burden shifts to the defendant to show a "legitimate, non-retaliatory reason for the alleged retaliatory action." *Carr*, 76 F.4th at 178. If the defendant meets its burden, then "the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* Therefore, a retaliation claim will survive summary judgment if the plaintiff has demonstrated a question of material fact as to but-for causation. *Ruiz*, 609 F.3d at 493.

The Second Circuit has held that "the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). Accordingly, to demonstrate retaliation in violation of the Equal Protection Clause, a plaintiff must establish that: "(1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." *Id.* This third element encompasses a requirement to show that the plaintiff made a complaint or "otherwise opposed discrimination," which the Second Circuit has described as akin to a showing that the plaintiff "engaged in protected activity" under Title VII. *Id.* Applying the Rule 56 standard to the elements of a Section 1983 retaliation claim, a plaintiff must, at a minimum, demonstrate the existence of a material question of fact as to each of the elements of a Section 1983 retaliation claim in order to survive summary judgment.

Defendants move for summary judgment on the Title VII retaliation claim against the District and the Section 1983 retaliation claims against all Defendants on several grounds. (*See* Mot.) If the record does not give rise to a material question of fact as to whether Williams engaged in protective activity (the first prong of the Title VII retaliation prima facie case) or

10

otherwise made a complaint of discrimination or opposed discrimination (part of the third element of a Section 1983 retaliation claim), the retaliation claims cannot survive summary judgment.

At the March 3, 2026 oral argument, Williams clarified that all retaliation claims are premised on a single instance of alleged protected activity: Williams' complaint about Pizzo to Campo made sometime in 2016 or 2017. (Mar. 3, 2026 Argument Tr. ("Tr.") 39:9–20.)[8] However, for the reasons that follow, Williams has not shown that the record gives rise to a material factual dispute concerning whether his complaint to Campo constituted protected activity under Title VII or otherwise constituted a complaint of or opposition to discrimination under Section 1983. Accordingly, I grant the District summary judgment on Williams' retaliation claims under both Title VII and Section 1983, and grant all Individual Defendants summary judgment on Williams' Section 1983 retaliation claims.

It is well-established that protected activities under Title VII include not only formal charges of discrimination, but also broadly any "oppos[ition] [to] any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a); *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 48 (2d Cir. 2012). Moreover, protected activities are not limited to complaints

---

[8] Williams also clarified that he does not bring a retaliatory hostile work environment claim, but instead challenges two purported retaliatory actions: the Board's termination of Williams as Facilities Director for the District and the denial of Williams' request to retire at the end of the school year with full health and retirement benefits. (Tr. 50:13–16.) The parties disagree whether these are in fact two separate alleged retaliatory actions. But as set forth on the record at the March 9, 2026 argument, Defendants' supplemental letter shows that two separate actions are at issue: first, the Board's January 9, 2019 decision to terminate Williams' employment as Facilities Director; and second, their decision sometime in March 2019 to offer Williams a rescission of the termination decision on the condition that he execute a settlement and general release under which Williams would retire on April 11, 2019, but would be bound by an MOU setting forth terms related to health and retirement benefits. (*See* ECF Nos. 81–82; Russo Aff ¶¶ 21–23; MOU; Settlement and Release Agreement.)

11

"involving discrimination against the complainant herself, but also extend to complaints of discrimination on behalf of other employees and complaints of discriminatory practices generally." *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015) (recognizing that protected activity can include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges"). For a plaintiff to have engaged in protected activity, the plaintiff also "need not prove that her underlying complaint of discrimination had merit," *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012), but only that the plaintiff had a "good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII]," *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001).

However, although the complaint may be informal, protected activity under Title VII "is action taken to protest or oppose *statutorily prohibited discrimination*." *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (emphasis added). Therefore, "[w]hile it is unnecessary for an individual to specifically invoke the word discrimination when complaining in order to alert her employer to her protected activity, there must be *some basis* to conclude that the employer was aware that the plaintiff engaged in protected activity." *Id.* (quoting *Lucio v. New York City Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014)) (emphasis added). Accordingly, evidence that a plaintiff made a "statement [that] is too general to indicate that [the plaintiff] was protesting" discrimination, is not enough to overcome summary judgment. *Id.*; *see also Collazo v. County of Suffolk*, 163 F. Supp. 3d 27, 51 (E.D.N.Y. 2016) ("Defendants could not have reasonably understood that Plaintiff was opposing discriminatory conduct by lodging general complaints about her supervisor's unfair treatment"); *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) ("[C]omplaints must be sufficiently specific to make it clear that the employee

12

is complaining about conduct prohibited by Title VII. Generalized complaints about a supervisor's treatment are insufficient.").

By contrast, the Second Circuit has not addressed what constitutes a complaint of "discrimination" under a Section 1983 retaliation claim, although it has suggested that this encompasses protected activity under Title VII. *See Vega*, 801 F.3d at 91 ("Retaliation occurs when an employer takes action against an employee not because of his ethnicity, but because he engaged in protected activity—complaining about or otherwise opposing discrimination."); *Fierro v. City of New York*, No. 1:20-cv-9966, 2022 WL 428264, at *8 (S.D.N.Y. Feb. 10, 2022) ("[I]t could be the case that *Vega* intended to permit retaliation claims based on the Equal Protections Clause to be actionable only in cases where a plaintiff reported discrimination due to their membership in a suspect or quasi-suspect class . . . [b]ut . . . *Vega* permitted claims based on any 'discrimination,' without expressly limiting the claim . . . ." (discussing *Vega*, 801 F.3d at 91)). However, like Title VII, the equal protection clause only protects against retaliation targeting complaints of, and opposition to, *discrimination. Gotfryd v. City of Newburgh*, No. 24-1039-CV, 2025 WL 973040, at *2 (2d Cir. Apr. 1, 2025) (summary order) ("Title VII's anti-retaliation provision, as extended to the Equal Protection Clause by *Vega*, prohibits retaliation on account of an employee's having opposed, complained of, or sought remedies for, *unlawful workplace discrimination*." (emphasis in original)). Williams has not argued that Section 1983's antiretaliation protection applies to complaints that are *broader* than the activities protected by Title VII's antiretaliation provision. (*See*, Opp'n at 15–21.) Accordingly, to the extent the record fails to give rise to a material question of fact as to Williams' engagement in protected activity under Title VII, the record also demonstrates an absence of a material question of fact as to

13

whether Williams complained of or opposed discrimination as required for a Section 1983 retaliation claim.

Applying these standards here, Williams has not identified any material dispute of fact as to whether he engaged in protected activity under Title VII because he has not identified any evidence in the record showing that his complaint to Campo "gave any specific indication that [he] was protesting discrimination." *Natofsky*, 921 F.3d at 354. To the contrary, Williams testified that he told Campo that Pizzo "was saying bad things about [him] in front of [his] people," that Pizzo "wasn't supportive," and that Williams "need[ed] [Campo's] help to figure out how best [to] handle this." (Williams Dep. 196:6–14.) Williams cannot recall telling Campo anything else. (*Id.* 196:15–22.) As a result, Williams' complaint to Campo was "too general to indicate that [Williams] was protesting" discrimination in 2016 or 2017 such that there is a question of fact as to whether Williams engaged in protected activity under the Title VII antiretaliation provision. *Natofsky*, 921 F.3d at 354.

Counsel for Williams disagree. They argue that although Williams did not use the term "discrimination," this was merely because Williams "wanted to think that he was not being mistreated because of his race." (Tr. 42:18–24.) Counsel argues that it should be enough that Williams complained of "mistreatment." (*Id.*) However, while Williams was not required to "invoke the word discrimination . . . there must be some basis to conclude that the employer was aware that the plaintiff engaged in protected activity." *Natofsky*, 921 F.3d at 354. There are several reasons why the record fails to raise a material question of fact as to whether Williams engaged in protective activity through his 2016 or 2017 complaint to Campo.

First, Williams himself testified that when Card notified him in December 2018 that he was recommending that Williams be terminated from the role of Facilities Director, Williams

had not communicated to anyone in the District that he thought he was being treated differently on account of race, color, or age. (Williams Dep. 141:12–142:21.)[9] In fact, Williams testified that he did not believe he was experiencing discrimination until he learned in late 2018 or early 2019 that he was being terminated from his role as Facilities Director without retirement benefits. (Williams Dep. 133:6–23.) Williams has not shown how Campo could have understood him to be complaining of discrimination in 2016 or 2017 when Williams himself did not come to believe he was experiencing discrimination until several years later.

Second, Williams has not identified any testimony by Campo indicating that Campo understood Williams to complain of discrimination in a 2016 or 2017 incident. Instead, Campo testified that Williams "came to [him] to say it seems no matter what" Williams did and what questions he asked, Pizzo "would say, how much more . . . of my time am I going to give you." (Campo Dep. 25:10–20.) Subsequently, Campo met with Williams and Pizzo together, and initially the sessions seemed positive. (Campo Dep. 26:19–27:7.) Campo testified that he learned that something different was happening once Pizzo "would begin to disparage [Williams] racially" in one-on-one discussions with Campo. (*Id.* 27:17–19.) However, the fact that Campo came to his own conclusion that Pizzo harbored racial animosity towards Williams does not

---

[9] Initially Williams testified that he had complained to someone in the district of discrimination on the basis of race, color, or age prior to December 2018 but he did not remember with whom he spoke and did not want to give any names. (Williams Dep. 135:13–141:8.) However, after being told that it was important to establish to whom he had complained, Williams testified that he complained to one of his subordinates, Zen Plotsky, sometime after December 2017. (*Id.*) He then testified that he had *not* complained of discrimination to anyone prior to December 2018. (*Id.* 141:12–142:22.)

Counsel for Williams confirmed during the March 3, 2026 argument that the only purported protected activity that Williams alleges is his complaint to Campo, not the complaint to Plotsky. (Tr. 39:9–20.)

create a material dispute of fact as to whether Williams' 2016 or 2017 complaint to Campo constituted protected activity when evidence in the record shows that the complaint itself concerned only "general complaints about [Pizzo's] unfair treatment" of Williams. *Collazo*, 163 F. Supp. 3d at 51.

Accordingly, Williams has not identified how the record supports a material question of fact as to whether he engaged in protected activity as required under Title VII or that he made a complaint of or otherwise opposed discrimination under Section 1983. Therefore, summary judgment is granted on Williams' Title VII retaliation claim against the District and his Section 1983 retaliation claims against all Defendants.[10]

---

[10] Moreover, the record does not support a material question of fact as to whether any "desire to retaliate was the but-for cause" of retaliation when Williams complained to Campo in 2016 or 2017 and the two asserted retaliatory actions occurred in early 2019. *Carr*, 76 F.4th at 178.

Additionally, it is not clear whether Williams exhausted his Title VII retaliation claims. As I explained at the March 9, 2026 argument, "unsworn letters sent to the EEOC describing additional claims of discrimination *unrelated to* the claims described in the EEOC charge cannot enlarge the scope of the original charge to include new claims." *Littlejohn*, 975 F.3d at 323. The same applies to rebuttals filed with the New York State Department of Human Rights. *Bailey-Lynch v. Dollar Tree Stores, Inc.*, No. 20-cv-01610, 2024 WL 3237457, at *5 (W.D.N.Y. May 22, 2024), *report and recommendation adopted*, 2024 WL 3234140 (W.D.N.Y. June 28, 2024). However, a rebuttal may be considered to "*clarify and amplify allegations* made in the original charge or allege additional facts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) (emphasis added), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Williams' original NYSDHR charge only asserts in a conclusory fashion that Williams experienced retaliation. (*See* Pl.'s Ex. U at 2, ECF No. 75-3 (alleging that "I submit the within Charge of Retaliation and Discrimination against said Respondents for the adverse employment actions that have been taken against me based upon my age, race, color and voicing of opposition to their wrongful acts . . . .") It is a close question whether this conclusory invocation of retaliation, without any supporting facts regarding to whom Williams "voice[d]" opposition or how he experienced retaliation, is sufficient to either exhaust Williams' retaliation claim or to allow Williams to clarify the retaliation claim in a rebuttal filing with the NYSDHR. However, I

16

**II.     NYSHRL Claims**

Defendants move for summary judgment on Williams' NYSHRL claims against all Defendants on two grounds. First, they argue that Williams' claims are time barred because the NYSHRL sets out a one-year statute of limitations for claims against a school district, and that one year had expired when Williams filed his civil action on June 11, 2021, challenging the alleged discriminatory termination in January 2019. (Mot. at 20.) Second, they argue that Williams' claims are barred because he failed to serve a notice of claim as required by New York Education Law. (*Id.*) Defendants are correct with respect to both arguments.

A.   Statute of Limitations

Although "[i]n general, claims arising under the NYSHRL are subject to a three-year statute of limitations," NYSHRL claims against a school district, its superintendent, its administrative officers, or its board of education, are governed by a *one-year* statute of limitations. *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-cv-10023, 2020 WL 2836760, at *15 (S.D.N.Y. May 31, 2020) (discussing N.Y. Educ. Law § 3813(2-b)). When bringing a NYSHRL claim, a plaintiff "may elect to seek redress in *either* an administrative . . . forum" before the New York State Division of Human Rights ("NYSDHR"), or through a civil action. *New York State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 160–61 (2d Cir. 2001) (emphasis added) (describing these remedies as "intended to be mutually exclusive"). If a person chooses the former, the existence of pending NYSDHR proceedings ordinarily tolls the statute of limitations for NYSHRL claims. *Schwartz v. Middletown City Sch. Dist.*, No. 23-cv-1248, 2024 WL 1257095, at *9 (S.D.N.Y. Mar. 25, 2024).

---

need not resolve this issue since, even assuming the claim is exhausted, summary judgment is warranted for the reasons already addressed.

However, New York Executive Law Section 297(9) ("Section 297(9)") provides that if a complaint is "annulled by the [NYSDHR], *upon the request of the party bringing such complaint before the division, such party's rights to bring such cause of action before a court of appropriate jurisdiction shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the division.*" N.Y. Exec. Law. § 297(9) (emphasis added). As a result, where a plaintiff requests and receives a dismissal of NYDHR proceedings for administrative convenience, NYSDHR proceedings do *not* toll the statute of limitations. *New York State Nat'l Org. for Women*, 261 F.3d at 161. The purpose of this rule is that "[b]y depriving complainants who provoke an administrative-convenience dismissal of the benefit of tolling, Section 297(9) discourages litigants from consuming State administrative adjudicatory resources only to start all over in court." *Strusman v. NYU Langone Hosps.*, No. 19-cv-9450, 2020 WL 3415111, at *7 (S.D.N.Y. June 22, 2020).

Defendants argue that this is precisely what happened here. Williams filed a charge with the NYSDHR on June 12, 2019 (ECF No. 75-3), and he alleges that the "NYSDHR cross filed [his] charge with the United States Equal Opportunity Commission [("EEOC")]." (Compl. ¶¶ 7–9; *see also* Opp'n at 23; ECF No. 82.) Thereafter, Williams received a right to sue letter from the EEOC on March 23, 2021, and he "requested, and received a dismissal for administrative convenience" from the NYSDHR. (*Id.* ¶ 8–9; *see also* Opp'n at 23; ECF No. 82.) On this basis, Defendants argue that "[w]here, as here, [Williams] requested, and received from DHR a dismissal for administrative convenience, . . . DHR proceedings do not toll the statute of limitations." (Mot. at 20.)

Williams disagrees. First, he argues that a three-year statute of limitations applies to his NYSHRL claims. (Opp'n at 21.) However, this is plainly incorrect. Because Williams brings

18

these claims against the District, its superintendent, its school board members, and one of its administrators, the one-year statute of limitations in New York Education Law Section 3813(2-b) governs. *See Langella*, 2020 WL 2836760, at *15 (citing N.Y. Educ. Law § 2(13) for application of the one-year statute of limitations to school officers, including board of education members, school superintendents, district superintendents, and "other elective or appointive officer[s] in a school district whose duties generally relate to the administration of affairs connected with the public school system").

Second, Williams argues that "[b]ecause [he] filed his complaint with the EEOC on June 12, 2019" the "statute of limitations [was] tolled" until Williams received a right to sue letter from the EEOC on March 23, 2021. (Opp'n at 21, 23.) Williams is correct that although the Second Circuit has not addressed the question, the "overwhelming weight of authority holds that the filing of a charge with the EEOC tolls the statute of limitations for related claims under the NYSHRL." *Schwartz*, 2024 WL 1257095, at *9. However, Williams overlooks a critical fact: he filed his charge with the "NYSDHR first (cross-filing with the EEOC)." ECF No. 82; *see also* Opp'n at 23; Comp. ¶¶ 7–9. This is significant because EEOC proceedings do not themselves toll the statute of limitations for NYSHRL claims. Instead, because of a work-sharing agreement between the EEOC and NYSDHR, complaints filed with the EEOC are automatically cross-filed with the NYSDHR, and it is *those proceedings* that toll the statute of limitations for NYSHRL claims. This is demonstrated by the court's reasoning in *Schwartz v. Middletown City School District*, where it explained:

> Although few opinions explain why tolling [of the statute of limitations with respect to NYSHRL claims] is appropriate [while EEOC proceedings are pending], the rationale stems from two interlocking New York Statutes. Most important is [Section 297(9)] which expressly stays NYSHRL suits about "unlawful discriminatory practices" while state administrative proceedings are pending . . . Next up is Civil Practice Law § 204(a), which provides that if an action is "stayed by a court or a statutory prohibition," the

"duration of the stay" does not count towards the applicable limitations period. Putting two and two together, the statute of limitations is tolled during the pendency of a complaint with the [NYSDHR] pursuant to CPLR 204(a) . . . Finally, complaints filed with the EEOC are deemed constructively to be cross-filed with the NYSDHR, meaning the statute is also tolled during the pendency of a claim filed with the EEOC.

2024 WL 1257095, at *9.

In other words, under both Section 297(9) and Civil Practice Law Section 204(a), the statute of limitations is generally tolled after a plaintiff files a complaint with the NYSDHR and does not subsequently seek dismissal for administrative convenience. Notably, in the cases on which Williams relies where plaintiffs filed *first with the EEOC*, plaintiffs were not required to seek dismissal of their NYSDHR proceedings after receiving a right to sue letter from the EEOC. N.Y. Comp. Codes R. & Regs. tit. 9, § 465.5 (b) ("A complaint filed by the [EEOC] . . . shall not require a dismissal from the [NYSDHR] where complainant seeks to pursue remedies in court."); *see also* Opp'n at 22–23 (collecting cases). Here, however, Williams *did* seek dismissal of his NYSDHR proceedings for administrative convenience under Section 297(9) as set forth in paragraph 9 of the Complaint, and he is therefore "limited by the statute of limitations in effect in such court *at the time the complaint was initially filed with the division*." N.Y. Exec. Law. § 297(9) (emphasis added). When Williams filed his charge with the NYSDHR, he faced a one-year statute of limitations for:

(1) his racial disparate treatment claims arising from his 2018 placement on a performance improvement plan, the January 9, 2019 termination of his employment as Facilities Director, and the School Board's March 2019 offer to rescind his termination upon execution of a settlement agreement with certain conditions;

(2) his retaliation claims arising from the January 9, 2019 termination of his employment as Facilities Director and the School Board's March 2019 offer to rescind the termination upon execution of a settlement agreement with certain conditions; and

(3) his hostile work environment claims, which concern workplace conduct that took place prior to the commencement of his leave of absence on April 1, 2019, which preceded the effective date of his termination as Facilities Director on April 11, 2019.

20

(Russo Aff ¶¶ 18, 21–23; ECF No. 54-39.)

All of this conduct took place before June 11, 2020, which is one year prior to the commencement of this action on June 11, 2021. Accordingly, Williams' NYSHRL claims are all barred by the applicable statute of limitations.

### B.  Notice of Claim

Even if Williams' NYSHRL claims were filed within the statute of limitations, these claims are barred for failure to serve a notice of claim. Under New York law, a notice of claim is a condition precedent to bringing a personal injury action against a municipal corporation, or any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *see Parise v. N.Y.C. Dep't of Sanitation*, 306 Fed. App'x 695, 697 (2d Cir. 2009); *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). "Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 793–94. As a result, "failure to abide by [the] terms [of the notice of claim requirements] mandates dismissal of the action for lack of subject-matter jurisdiction." *Tulino v. City of N.Y.*, No. 15-cv-7106, 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016).

In opposition to Defendants' Motion, Williams submitted a letter sent by his counsel to Card on June 19, 2019, which he contends is a notice of claim. (Pl.'s Ex. V, ECF No. 75-4.) Defendants argue that this letter suffers numerous defects precluding it from serving as a notice of claim, including but not limited to the fact that it is untimely. (Reply Br. Supp. Mot. Sum. J. ("Reply") at 8–9, ECF No. 75-8.) Section 3813(1) of the New York Education Law provides that "[n]o action or special proceeding, for any cause whatsoever" shall be permitted against a school district unless a "written verified claim . . . [is] presented to the governing body of said district or

school *within three months* after the accrual of such action." N.Y. Educ. Law § 3813(1) (emphasis added); *see also Arkorful v. New York City Dep't of Educ.*, 712 F. Supp. 3d 336, 349 (E.D.N.Y. 2024) (holding that failure to comply with this requirement is "fatal" to a NYSHRL claim). Williams argues, without citing any authority, that the June 19, 2019 letter was a timely notice of claim because his counsel sent it to Card within 90 days of the date that the termination of his employment *took effect* on April 11, 2019. (Opp'n at 25.) However, an "ordinary wrongful-discharge claim accrues—and the limitations period begins to run—when the employer *notifies the employee he is fired*, not on the last day of his employment." *Green v. Brennan*, 578 U.S. 547, 564 (2016); *see also Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 70 (2d Cir. 2024) ("[T]he statute of limitations under the NYSHRL begins to run when an employee receives a definite notice that the employer will undertake an adverse action.").

First, Williams fails to show that the June 19, 2019 letter served as a timely notice of claim for any of the three racial disparate treatment claims brought pursuant to the NYSHRL. First, Williams has not shown that his NYSRHL claim for discriminatory termination of employment was anything but an "ordinary" wrongful-discharge claim. Therefore, he was required to submit a notice of claim concerning this specific claim within three months of the Board's January 9, 2019 vote to approve the termination. (Russo Aff ¶¶ 18, 23.) Because the June 19, 2019 letter was filed months after the April 19, 2019 cutoff date, it does not constitute a timely notice. Second, the June 19, 2019 letter was issued more than three months after his placement on a performance improvement plan sometime in 2018. Third, Williams has not argued, much less shown, that the letter was issued within three months of the School Board's offer to rescind the termination of his employment on certain conditions, which took place sometime in March 2019. (Russo Aff ¶¶ 22–23.) Williams does not explain in either his brief

22

opposing summary judgment or his supplemental letter following the March 3, 2026 oral argument precisely when in March 2019 the School Board offered to rescind the termination of employment on certain conditions. (*See generally* Opp'n; ECF No. 82.) Thus, Williams has abandoned the argument that this prong of his NYSHRL racial disparate treatment claim complies with New York law requiring the filing of a timely notice of claim. *See Now-Casting*, 628 F. Supp. 3d at 519.

Nor has Williams shown that the June 19, 2019 letter constitutes a timely notice of his retaliation claims. Because the retaliation claims challenge the termination of Williams' employment and Defendants' conduct leading to the denial of his health and retirement benefits, those claims accrue from the dates of the underlying termination and denial of benefits. *See Kemp*, 117 F.4th at 70. As explained, Plaintiffs have not shown that the June 19, 2019 letter was filed within three months of either of those challenged actions as required for a timely notice with respect to the NYSHRL retaliation claims.

Finally, Williams fails to argue that any notice of claim, much less the June 19, 2019 letter, was sent within three months of the accrual of his hostile work environment claims. Hostile work environment claims "continue[] to accrue, or reaccrue[], each time the defendant engages in an act that is part of the ongoing, discriminatory practice that created a hostile work environment." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 88 (2d Cir. 2024). Williams does not indicate when the last act in the alleged hostile work environment occurred, although it is undisputed that he commenced unpaid leave on April 1, 2019. Williams has not argued that any acts forming part of the hostile work environment occurred in the twelve days between March 19, 2019—three months prior to Williams' purported notice of claim—and the

commencement of Williams' leave of absence on April 1, 2019. Thus, he has also failed to show that he filed a timely notice of claim to support the NYSHRL hostile work environment claims.[11]

Williams argues that to the extent his notice of claim was defective, the error should be excused because Defendants did not raise any issue regarding the June 19, 2019 letter in their answer. (Opp'n at 24.) However, the submission of a notice of claim is a requirement for subject matter jurisdiction and cannot be excused. *Tulino*, 2016 WL 2967847, at *3.

Williams next argues that New York law "provides that an omission or defect in a notice of claim which was made in good faith may be corrected or disregarded at any stage of an action, in the court's discretion, provided the other party was not prejudiced thereby." (Opp'n at 25–26 (discussing N.Y. Gen. Mun. Law § 50–e(6)). However, New York General Municipal Law § 50–e(6) does not cover defects related to untimely service of a notice of claim, as it makes clear that:

> [a]t any time after the service of a notice of claim and at any stage of an action . . . a mistake, omission, irregularity or defect made in good faith in the notice of claim . . . *not pertaining to the manner or time of service thereof*, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby.

N.Y. Gen. Mun. Law § 50–e(6) (emphasis added).

Instead, New York General Municipal Law Section 50–e(5) provides that any application for an extension of time to serve a notice of claim "shall be made to the supreme court or to the county court," which cannot extend the time for service of the notice of claim beyond the "time limited for the commencement of an action by the claimant." *In re Dayton*, 786 F. Supp. 2d 809, 824–25 (S.D.N.Y. 2011). Accordingly, in *In re Dayton*, the court held that federal courts lack

---

[11] Even if the June 19, 2019 letter serves as a timely notice of claim for the NYSHRL hostile work environment claim, this claim is still time barred because it accrued, at the latest, on April 1, 2019 and was subject to a one-year statute of limitations. However, Williams did not file this action until June 11, 2021.

jurisdiction to grant an extension of time to file a late notice of claim or to treat an untimely notice of claim as an "application to file a late notice of claim" *Id.* at 825. As a result, where a plaintiff files an untimely notice of claim and fails to request an extension of time for service of that notice of claim in the appropriate state court, the untimely notice of claim is "treated as a nullity." *Id.*

Here, Williams has not alleged, much less shown, that he requested an extension of time to submit a notice of claim with respect to any of his NYSHRL claims. Accordingly, I lack subject matter jurisdiction over the NYSHRL claims, and summary judgment is granted to Defendants on these claims.

### III.   Punitive Damages

Defendants move to strike Williams' request for punitive damages against all Defendants because Title VII does not allow punitive damages against municipalities, the District is immune from punitive damages under Section 1983, and the "undisputed evidence is insufficient to meet the high threshold necessary to obtain an award of punitive damages against the individual Defendants." (Mot. at 27 n.11.) Williams fails to respond to these arguments. (*See generally* Opp'n.) Therefore, his request for punitive damages is abandoned and is stricken. *See Now-Casting*, 628 F. Supp. 3d at 519.

### CONCLUSION

For the reasons set forth above and during the March 9, 2026 argument, Defendants' Motion for Summary Judgment (ECF No. 75) is granted in part and denied in part as follows.

Summary judgment is denied as to:

1. Williams' racial disparate treatment claims against the District under Title VII and Section 1983 for (a) the placement of Williams on a performance improvement plan, (b) terminating him from the role of Facilities Director at the District, and (c) the termination of his retirement and health benefits due to the Board's offer to rescind the January 9,

2019 termination decision on the condition that Williams sign a proposed settlement agreement with specific terms set forth in a MOU.

2.  Williams' racial disparate treatment claims under Section 1983 against Defendants Pizzo and Card for (a) placing Williams on a performance improvement plan, (b) their involvement in the Board's decision to terminate him from the role of Facilities Director at the District, and (c) the termination of his retirement and health benefits due to their role in the Board's offer to rescind the January 9, 2019 termination decision on the condition that Williams sign a proposed settlement agreement with specific terms set forth in a MOU.

3.  Williams' Section 1983 hostile work environment claim against Pizzo in his individual capacity.

Summary judgment is granted as to Williams' remaining claims. Because no claims remain against the Board Member Defendants, they are dismissed from this action.

Dated: Central Islip, New York
March 12, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge

26